IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **KIMBERLEY MEADOR, Individually** | § | |
| **and as Guardian for L.M., a Minor;** | § | |
| **AMOS STANDARD, Individually and** | § | |
| **on Behalf of the Estate of SHARI** | § | |
| **STANDARD, Deceased; and RUSSELL** | § | |
| **JONES, Individually and on Behalf of the** | § | Case No. 6:15-cv-715 |
| **Estate of SANDRA JONES, Deceased** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **APPLE, INC.** | § | |

## REPORT AND RECOMMENDATION

The above-styled matter is referred to the undersigned for all pretrial matters in accordance with 28 U.S.C. § 636. Pending before the Court is Defendant Apple, Inc.'s Motion to Dismiss (Doc. No. 7). Having considered the motion, responses, and reply briefs, the Court recommends that the Motion to Dismiss be **GRANTED** and that Plaintiffs' claims be **DISMISSED WITH PREJUDICE**.

### BACKGROUND

The events giving rise to this products liability suit occurred on April 30, 2013, in Rusk County, Texas. Sandra Jones, Jones's grandson—L.M., and Shari Standard were traveling along Highway 43 near Henderson, Texas, in a Chevrolet Tahoe when they were rear-ended by a Dodge Ram truck driven by Ashley Kubiak, a non-party to this suit. Plaintiffs allege that immediately prior to the collision, Kubiak was operating her Apple iPhone to check an incoming message while driving, and thus was distracted from the safe operation of her vehicle. Kubiak's truck pushed the Tahoe into oncoming traffic, where it was again struck on the passenger side by a vehicle traveling the opposite direction. Jones and Standard were pinned inside the Tahoe and

died at the scene of the collision. L.M. was air-lifted to a hospital in Dallas, Texas, where he was placed on life support and survived. Kubiak was subsequently indicted, and after a jury trial, convicted of two counts of criminally negligent homicide.

Plaintiffs filed this suit on July 28, 2015, against Defendant Apple, Inc. ("Apple"), asserting claims of strict products liability and negligence. Plaintiffs allege that the Apple iPhone, as designed and marketed, is defective and unreasonably dangerous in that Apple failed to configure the iPhone to automatically disable a user's ability to operate the iPhone while driving and failed to warn users of the dangers of operating the iPhone while driving. Furthermore, Plaintiffs allege that Apple holds a United States patent to a "lock-out mechanism" which, if implemented in the iPhone, would prevent a driver from using certain features of the iPhone while traveling above a predetermined speed. Finally, Plaintiffs allege that Apple's conduct caused the injuries complained of here.

Apple filed the instant motion to dismiss for failure to state a claim upon which relief can be granted on September 17, 2015, arguing that the facts alleged in Plaintiffs' complaint establish that Apple's conduct was not the legal cause of Plaintiffs' injuries. After briefing on Apple's motion was complete, Plaintiffs filed an amended complaint (Doc. No. 33). On May 6, 2016, the parties filed a joint stipulation (Doc. No. 41) that Apple's motion and the briefing in response thereto would also apply to Plaintiffs' First Amended Complaint.

## APPLICABLE LAW

*Dismissal under Rule 12(b)(6)*

The Court utilizes a "two-pronged approach" in considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the Court identifies and excludes legal conclusions that "are not

entitled to the assumption of truth." *Id.* Second, the Court considers the remaining "well-pleaded factual allegations." *Id.* The Court must accept as true all facts alleged in a plaintiff's complaint, and the Court views the facts in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). A plaintiff's complaint survives a defendant's Rule 12(b)(6) motion to dismiss if it includes facts sufficient "to raise a right to relief above the speculative level." *Id.* (quotations and citations omitted). Stated differently, the Court must consider whether a plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Products Liability Claims*

Texas products liability law governs in this diversity action. Under Texas law, a products liability suit may be grounded in one or more of three theories of recovery: (1) strict liability, (2) breach of warranty, or (3) negligence. *Lopez v. Delta Power Equip. Corp.*, No. EP-14-CV-00362-DCG, 2015 WL 3369335, at *2 (W.D. Tex. May 21, 2015) (citing *Syrie v. Knoll Intern.*, 748 F.2d 304, 306 (5th Cir. 1984)). As noted above, here, Plaintiffs assert strict liability and negligence claims.

In analyzing strict liability claims based on the sale of dangerously defective products, Texas courts have adopted Section 402A of the Restatement (Second) of Torts. *Disalvatore v. Foretravel, Inc.*, No. 9:14-CV-150, 2016 WL 3951426, at *9 (E.D. Tex. June 30, 2016) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–90 (Tex. 1967)), *adopted*, 9:14-CV-150, 2016 WL 3926575 (E.D. Tex. July 21, 2016). There are three types of defect claims: design

defects, manufacturing defects,[1] and marketing defects. *Id.* To state a plausible claim under any of these theories, Plaintiffs must allege facts which, if true, establish that: (1) the Apple iPhone was defective; (2) the defect rendered the iPhone unreasonably dangerous; (3) the iPhone reached the ultimate consumer without substantial change in its condition from the time of the original sale; and (4) the iPhone was the producing cause of Plaintiffs' injuries. *Lopez*, 2015 WL 3369335, at *2 (citing *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 427 (5th Cir. 2001)).

"A negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer." *Syrie*, 748 F.2d at 307.

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Id.* (quoting *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)). To state a plausible products liability claim under a negligence theory, Plaintiffs must allege facts which, if true, establish: (1) the existence of a duty owed by Apple to Plaintiffs; (2) a breach of that duty; and (3) injury to Plaintiffs as a proximate result of the breach. *Disalvatore*, 2016 WL 3951426, at *13 (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex. 1983)).

## DISCUSSION

In its motion to dismiss, Apple challenges only the causation element of Plaintiffs' strict liability and negligence claims. Apple contends that Plaintiffs have not pleaded and cannot show under any set of facts that the iPhone, and Apple's conduct in designing and marketing the iPhone, was the producing or proximate cause of Plaintiffs' injuries. Instead, Apple contends that

---

[1] Although Plaintiffs' First Amended Complaint asserts a strict liability claim under a manufacturing defect theory, Plaintiffs indicate in their response to Apple's motion to dismiss that they no longer wish to pursue their claims under that theory. *See* Doc. No. 11 at 9 n.2.

Ashley Kubiak's negligent behavior while driving was the sole legal cause of the traffic accident giving rise to this case. Citing similar cases from various jurisdictions, Apple also asserts that no court in the nation has imposed liability on a device manufacturer when the plaintiffs alleged they were injured by a user distracted by the device while operating a vehicle. *See Durkee v. C.H. Robinson Worldwide, Inc.*, 765 F. Supp. 2d 742, 749–50 (W.D.N.C. 2011), *aff'd sub nom. Durkee v. Geologic Sols., Inc.*, 502 F. App'x. 326 (4th Cir. 2013); *Am. Winds Flight Acad. v. Garmin Intern.*, No. 5:07-CV-3401, 2010 WL 3783136, at *7–9 (N.D. Ohio Sept. 17, 2010); *Ford v. Hertz Corp.*, No. G045714, 2012 WL 1238489, at *4–5 (Cal. Ct. App. Apr. 13, 2012); *Estate of Doyle v. Sprint/Nextel Corp.*, 248 P.3d 947, 949–51 (Okla. Civ. App. 2010); *Williams v. Cingular Wireless*, 809 N.E.2d 473, 476–79 (Ind. Ct. App. 2004). Plaintiffs respond that the facts as alleged are sufficient to establish causation. Additionally, they contend that every similar case proffered by Apple is distinguishable on both the facts and the applicable law.

Because Apple's motion takes issue with the causation element of Plaintiffs' claims, the decisions Apple cites are largely unhelpful in this case, which appears to be one of first impression in Texas. Each of the strict liability cases upon which Apple relies turns on either the product defect or proximate causation. *See Ford*, 2012 WL 1238489, at *4–5 (holding that navigation system in rental car was not defective when plaintiff "did not allege facts showing that the navigation system failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner" and alleged defect "was not a hazard inherent to the navigation system"); *Am. Winds*, 2010 WL 3783136, at *7–9 (holding that navigation system in airplane was not defective when risk associated with using the system in the manner alleged was open and obvious and alleged use was unforeseeable to system manufacturer). Texas strict products liability law, however, requires that the product be the

5

producing cause of the plaintiff's injuries, not the proximate cause; foreseeability is not a consideration. *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).

Similarly, two of the negligence cases Apple cites turn on whether the manufacturer owed a duty to the plaintiffs. *See Williams*, 809 N.E.2d at 476–79 (holding that cell phone manufacturer owed no duty to plaintiffs in part because third party's negligent use of cell phone while driving was not reasonably foreseeable); *Doyle*, 248 P.3d at 949–51 (same). And although the discussion of proximate cause in *Durkee* has at least some persuasive value as to Plaintiffs' negligence claim, Apple references portions of the opinion devoted to the element of duty, not causation. *See* 765 F. Supp. 2d at 749–50 (holding that manufacturer of vehicle text message system owed no duty to plaintiffs when driver of vehicle negligently used system while driving). Because these cases do not speak directly to the issues raised by the parties here, there is more guidance to be found in Texas products liability cases addressing causation.

As mentioned previously, producing cause is the test in strict liability, whereas negligence requires a showing of proximate cause. *Union Pump*, 898 S.W.2d at 775. Proximate cause consists of both cause in fact and foreseeability. *Id.* "Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause." *Id.* The producing cause inquiry, therefore, "is conceptually identical to that of cause in fact." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 223 (Tex. 2010). The common element, then, to both proximate cause and producing cause is causation in fact. *See id.* (citing *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995)). This requires proof that the conduct complained of was "a substantial factor in bringing about an injury, and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007). A plaintiff cannot, however, demonstrate cause in fact where "the defendant's

conduct or product does no more than furnish the condition that makes the plaintiff's injury possible." *Union Pump*, 898 S.W.2d at 776. "In other words, the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm." *IHS Cedars Treatment Center of DeSoto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004); *see also Union Pump*, 898 S.W.2d at 775 ("At some point in the causal chain, the defendant's conduct or product may be too remotely connected with the plaintiff's injury to constitute legal causation."). Causation may be considered a question of law when the relationship between the plaintiff's injuries and the defendant's conduct or product is attenuated or remote. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) and *Union Pump*, 898 S.W.2d at 776).

The Supreme Court of Texas has twice addressed attenuation in the context of products liability cases. In *Lear Siegler, Inc. v. Perez*, an employee of the Texas Highway Department—Perez—stopped his truck on the highway when the flashing arrow sign he was pulling behind a sweeping operation malfunctioned. 819 S.W.2d 470, 471 (Tex. 1991). As Perez was working on the sign, a driver who had fallen asleep at the wheel struck the sign, which in turn struck Perez, causing severe injuries that later resulted in Perez's death. *Id.* Perez's survivors sued the manufacturer of the sign, arguing that the defective sign caused Perez's death. *Id.* at 472. Based on the facts of the case, the Supreme Court held that the connection between the defendant's conduct was too attenuated to constitute the legal cause of Perez's death. *See id.* The fact that Perez would not have been at the place where the accident occurred "but for" the malfunction was insufficient to establish cause in fact. *See id.*

7

In *Union Pump*, a pump manufactured by the defendant caught fire and ignited the surrounding area. 898 S.W.2d at 774. The plaintiff and her supervisor assisted in putting out the fire, which left the area near the pump wet with water or firefighting foam. *Id.* The two employees left the area, but two hours later came back to shut off a valve near the pump. *Id.* After checking the valve, the employees chose to return along an unsafe route by walking over a pipe rack. *Id.* In doing so, the plaintiff slipped and fell, thereby injuring herself. *Id.* The plaintiff sued the pump manufacturer under negligence and strict liability theories of recovery and claimed that but for the pump fire, she would not have walked over the wet pump rack and fallen. *Id.* In holding that the plaintiff's injuries were too remotely connected with the defendant's conduct or the pump to constitute the legal cause of the injuries, the supreme court reasoned that the pump fire did no more than create the condition that made the plaintiff's injuries possible. *Id.* at 776. The court elaborated that "the forces generated by the fire had come to rest when she fell off the pipe rack. The fire had been extinguished, and [the plaintiff] was walking away from the scene." *Id.*

In both of these cases, the supreme court found a comment to Section 431 of the Restatement (Second) of Torts instructive on the issue of legal causation:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . . The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

RESTATEMENT (SECOND) OF TORTS § 431 cmt. a (1965); *see Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472.

8

Plaintiffs' claims here do not clear the attenuation hurdle set forth in *Lear Siegler* and *Union Pump*. In Plaintiffs' own words:

> The natural sequence of events alleged by Plaintiffs can be summarized as follows: (1) Apple fails to implement its own patented technology to provide a "lock-out" mechanism for the iPhone to prevent texting and driving at highway speeds; (2) Kubiak's iPhone delivers a message to her while driving at highway speeds; (3) Kubiak's attention is drawn away from the roadway by the iPhone to check said message; (4) Kubiak fails to see Plaintiffs' vehicle slowing to make a left-hand turn; and (5) Kubiak's vehicle collides with Plaintiffs vehicle and thereafter injury results.

Doc. No. 11 at 23. Even taking these factual allegations as true, the forces generated by the iPhone's alleged defect and by Apple's conduct in designing and marketing the iPhone came to rest after the incoming message was delivered to Kubiak's iPhone. *See Union Pump*, 898 S.W.2d at 776. At that point, "'no one was in any real or apparent danger'" based simply on the delivery of the message. *Id.* (quoting *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex. 1968)). Instead, a real risk of injury did not materialize until Kubiak neglected her duty to safely operate her vehicle by diverting her attention from the roadway. In that sense, Apple's failure to configure the iPhone to automatically disable did nothing more than create the condition that made Plaintiffs' injuries possible. Because the circumstances here are not "such that reasonable jurors would identify [the iPhone or Apple's conduct] as being actually responsible for the ultimate harm" to Plaintiffs, the iPhone and Apple's conduct are too remotely connected with Plaintiffs' injuries to constitute their legal cause. *See Crump*, 330 S.W.3d at 224. Accordingly, Plaintiffs have failed to state a plausible products liability claim under either a strict liability or negligence theory. *See Twombly*, 550 U.S. at 570. Plaintiffs' claims should, therefore, be dismissed with prejudice.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

9

313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). Leave to amend should be denied, however, if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x. 534, 535 (5th Cir. 2007) (per curiam) ("[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile."). Here, Plaintiffs have not requested leave to amend in the event the Court determines their claims should be dismissed. Even if they had, though, an amendment would not cure the deficiencies identified above. Plaintiffs' First Amended Complaint sets forth their best case on the causation element of their claims, but still falls short of stating legally cognizable claims of strict products liability and negligence. Accordingly, allowing Plaintiffs to amend their complaint would be futile under the facts presented in this case.

### RECOMMENDATION

For the foregoing reasons, the Court recommends that Defendant Apple, Inc.'s Motion to Dismiss (Doc. No. 7) be **GRANTED** and that Plaintiffs' claims be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 16th day of August, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE