# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

KIMBERLY MEADOR, INDIVIDUALLY,  )
AND AS GUARDIAN FOR L.M., A MINOR; AMOS )
STANDARD, INDIVIDUALLY, AND ON BEHALF )
OF THE ESTATE OF SHARI STANDARD, )
DECEASED; AND RUSSELL JONES, )
INDIVIDUALLY, AND ON BEHALF OF THE )
ESTATE OF SANDRA JONES, DECEASED; )  No. 6:15-cv-715-MHS-KNM
         )
   Plaintiffs,   )
  v.      )
         )
APPLE, INC.;     )
         )
         )
   Defendant.   )
         )

## Declaration of David Greenfield, Ph.D.

I David Greenfield, declare as follows:

I have been retained by and submit this declaration in the above identified case in support of Plaintiffs' Motion for Leave to Amend Plaintiffs' Complaint. I make this declaration based on my own personal knowledge or upon information and belief or upon conclusions drawn from my expertise in the field of behavioral science, technology addiction, and/or distracted driving.

## I.    Qualifications:

As summarized in the copy of my Curriculum Vitae attached as Exhibit 1, I am a Founder of the Center for Internet and Technology Addiction located in West Hartford, Connecticut, and am an attending supervising doctor and assistant clinical professor of Psychiatry, at the University of Connecticut, School of Medicine.   See Exibit 1, Greenfield CV. My clinical interests and specialties include: compulsive use of the internet and digital technology; neurobiology and neuropharmacology of computer, internet, and video game use, technology and its impact on the family; the evolutionary biology of addiction; smartphone use and distracted driving; and technology abuse issues in business and legal arenas.   Relevant to the issues discussed in this declaration, I have treatment specialties in:  addiction medicine, EMDR therapy, and compulsive online sexual and video gaming behavior.

I received a Ph.D. degree in 1986 in psychology from Texas Tech University, along with hospital Internship and residency,  M.A. degree, in 1980 in psychology from New York University, a B.A. degree in 1978 in psychology from Ramapo College of New Jersey, and I am in the process of finalizing a post-doctoral M.S. degree in Clinical Psychopharmacology from Fairleigh Dickenson University, Teaneck, New Jersey. I am licensed to practice in Connecticut and New York, and Board certified in Addictions, as well other national memberships and certifications.

2

## II.     Scope of Work:

1.     I have been retained by the Plaintiffs in the case currently pending in the United States District Court in the Eastern District of Texas, Tyler Division, styled *Meador et. al. v. Apple, Inc.,* cause no. 6:15-cv-00715.

2.     My scope of work for this case includes providing conclusions and/or data based on studies performed by me or my peers, reviewing the facts and/or data relevant to the above referenced case, and rendering the following based on reasonable probabilities in the fields of behavioral science and neurobiology, taking into account the facts of the motor vehicle collision sequence at issue as I understand them:

(i)  An overview of studies, observations, and science establishing within all reasonable probability that smartphone use while driving is compulsive or addictive in nature;

(ii) In light of compulsion/addiction studies and literature in the field of message checking smartphones while driving, provide an opinion on the voluntary/involuntary nature of message checking smartphones in the context of driving a motor vehicle.

(iii) Provide an opinion on whether or not in all reasonable probability, the act of message checking by Kubiak was likely the result of an involuntary response/compulsion due to the notifications emitted and availability of messaging in Ms. Kubiak's iPhone 5.

(iv) Provide an opinion on whether or not, in all reasonable probability, an involuntary lock-out mechanism identified by plaintiffs as a safer alternative design (like the one invented by Apple in the '143 patent) would have likely prevented or significantly reduced the act of message checking that occurred in the instant case.

(v) Provide an opinion on whether or not Apple through its manufacturing, design, and marketing of the iPhone 5, likely exacerbated the rate of incidence of the act of message checking while driving.

3.    When used herein, the phrase "texting behavior" is intended to encompass the acts of: responding to notifications on a smartphone, reading messages on a smartphone, sending messages on a smartphone, or otherwise engaging in use of a smartphone in a manner that distracts one from the safe operation of a motor vehicle.

4.    When used herein the phrase "reasonable probability" or words "likely," "probable" or "probably" are intended to encompass a reasonable degree of probability based on current scientific studies, data, and literature in the fields of behavioral science, distracted driving, internet and smartphone addiction/compulsion, taking into account relevant traffic safety and law enforcement data. Based on my education, training and experience, I am qualified to render the opinions provided herein.

III.    **Summary of Opinions:**

A.    I can state with a high degree of reasonable probability, that immediately before the motor vehicle crash in question, Ms. Kubiak was responding to an unconscious and automatic, neurobiological compulsion to engage in texting behavior while driving when she received a notification on her iPhone 5 and looked down to read a message on her iPhone 5 while driving at highway speeds.

B.  It is highly likely, Ms. Kubiak was acting compulsively in response to an incoming notification - just as the majority of drivers admit to in my research as well as others'. It is likely that such notifications activate the

anticipatory reward pathways in the mesolimbic structures of the brain, which initiate the compulsive cascade of behavior that led to Ms. Kubiak to read a message on her iPhone 5 while driving at highway speeds.

C.     It is reasonably probable that any electronic mechanism or device that blocks or prevents the provision of messaging notifications, and the ability to use distracting functions, such as the Messages application on the iPhone 5, should prevent or reduce the likelihood of texting behavior. There are numerous free-standing programs, applications and devices that do similar functions but these programs are severely limited in that they are controlled by the user/driver and can be turned off or eliminated if the driver so chose.  As I understand the safer alternative design proposed by the Plaintiffs in this case (i.e. Apple's '143 patent), if the safer alternative design would have been implemented by Apple, Kubiak likely would not have received notification of an incoming message, and likely would have not been compelled or able to engage in reading a message on her iPhone 5 while driving at highway speeds.

D.     It is my opinion that any native, device-based technology of some type (i.e. plaintiffs' safer alternative design or Apple's '143 patent) that could have been utilized but was not, has exacerbated the incidence of texting behavior while driving at highway speeds.

## IV. Detailed Analysis

### The Collision in Question

5.     The motor vehicle crash in question occurred on April 30, 2013 at approximately 4:35 pm on Texas State Highway 43 near mile post 324 in Rusk County, Texas.

6.     The posted speed limit at this location was 70 miles per hour. According to my review of the certified records provided by the Texas Department of Public Safety in its investigation of the motor vehicle crash in question, it is my understanding that the following sequence of events led to the motor vehicle collision which killed Shari Standard and Sandra Jones, and rendered L.M., a minor, paralyzed from the chest down:

- Unit 1 (driven by Ashley Kubiak) was travelling northeast on Texas State Highway 43.  Unit 1 was travelling behind Unit 2 (occupied by Standard, Jones, and L.M.).

- Unit 2 was slowing its rate of travel to make a left turn onto county road 214-D.  Driver of Unit 1 (Ashley Kubiak) was distracted inside her vehicle by her iPhone 5.  According to Trooper II Dustin Nichols, the investigating officer of the crash, Ashley Kubiak told him "in three (3) ways that she looked down at her phone at an incoming text then looked up and saw Unit 2; she then swerved to the right in an attempt to avoid a crash."  See Exhibit 2, Texas Department of Public Safety Deposition on Written Questions, P.000005, ¶ 14 – Offense Report & Crash Report.

- Unit 1 could not avoid striking Unit 2, and struck Unit 2, pushing Unit 2 into the on-coming lane of traffic where Unit 2 was immediately struck by Unit 3, a Ford F-250 travelling southeast on State Highway 43.  Figure 1, below is a visual representation of the collision drawn by Trooper II, Dustin Nichols.



Figure 1 – Diagram from Motor Vehicle Crash Report – Exhibit 2, P. 000011.

- Shari Standard and Sandra Jones expired on the scene of the collision, shortly after the impact between Unit 3 and Unit 2. L.M. the minor child was transported from the scene for medical treatment.

7.    Trooper Nichols conducted an interview of Ashley Kubiak on May 6, 2013, as part of his investigation. I have been provided and reviewed the audio/video recording of the interview attached to the Deposition on Written Questions taken of the Texas Department of Public Safety

8.    The conclusion reached by Trooper Nichols on how the crash in question occurred, including all contributing factors and how they relate to the crash appears in Figure 2 below:

## CONCLUSION

**BRIEFLY DESCRIBE WHY OR HOW THIS CRASH OCCURRED. LIST ALL CONTRIBUTING FACTORS AND HOW THEY RELATE TO THE CRASH. THIS IS YOUR OPINION.**

UNITS 1 & 2 WERE TRAVELING NE ON SH 43, WHILE UNIT 3 WAS TRAVELING SW. UNIT 2 WAS SLOWING TO MAKE A LEFT TURN ONTO COUNTY ROAD 214-D. THE DRIVER OF UNIT 1 STATED THAT SHE WAS LOOKING DOWN READING A TEXT AND LOOKED UP AND SAW UNIT 2 IN FRONT OF HER. UNIT 1 SWERVED TO THE RIGHT IN AN ATTEMPT TO AVOID A COLLISION, BUT STRUCK UNIT 2 IN THE BR WITH ITS FL. THIS CAUSED UNIT 2 TO BE PUSHED INTO THE ONCOMING LANE AND INTO THE PATH OF UNIT 3. UNIT 2 WAS THEN STRUCK IN THE RP BY UNIT 3'S FD. THIS CAUSED UNIT 2 TO ROLL OVER TO THE LEFT, WHERE IT CAME TO REST IN THE DITCH UPRIGHT. UNITS 1 & 3 CAME TO REST ON THE NW SHOULDER.

### Behavioral Science and Neurobiology and Smartphone Use While Driving

9.     There are numerous psychiatric, psychological, and neurobiological studies that have examined the roll and impact of texting and other aspects of Smartphone use on operating an automobile. The field of distracted driving has clearly demonstrated in both experimental and field observations that message checking, message reading, texting and other Smartphone behaviors occur despite the majority of drivers' knowing that is posses clear danger and that the use of our Smartphones can be compulsive and automatic (i.e. without frontal lobe judgment, meaning that it is coming from the mesolimbic reward pathways that compel us to respond to and send texts and other data), even while driving.

10.     In a joint collaborative study I did with AT&T in May of 2014 we looked at 1,004 respondents in a random telephone survey. Subjects were between the ages of 16 and 65, owned a cell/Smartphone, admitted to texting at least once a day, and drove daily. The results supported near universal agreement of the subjects understanding the dangers of texting while driving, yet, over 74% still admitted doing so.

Exhibit R

11.     This finding has been examined by many researchers seeking to understand why drivers would engage in such an obviously dangerous behavior. Approximately 30% admit that such behavior is a compulsive habit and that they are using their Smartphones without thinking about it-even while operating a motor vehicle as the driver. In other words, it is an automatic-unconscious behavior. Essentially, the compulsion to check messages on a smartphone exists all the time—it just doesn't turn off when we get behind the drivers' wheel. There are various rationales made to explain texting behavior but some subjects have reported they believe that texting while stopped in traffic or at a light is less dangerous; however, the data do not support this belief.

12.     My research in this area is focused most specifically on the compulsive and addictive nature of Internet and Smartphone technology, and I have been researching and treating this issue since the late 1990's. We know that the Internet is addictive to some people, and many more use it compulsively. I call the Internet the world's largest "slot machine" because it operates on a variable ratio reinforcement schedule. This schedule of reinforcement is the most resistant to extinction which means a person is unlikely to discontinue it as long as they are subjected to activating notifications and finding occasional salient data/messages. The Smartphone is essentially an untethered, portable Internet portal and has some other unique properties that make it that much more compelling for people to use, overuse, and use while driving.

13.     I commonly refer to the smartphone as "the world's smallest slot machine" because users receive constant invitations to check data and texts; these invitations come in the form of notifications (i.e. buzzes, rings, or beeps) (Greenfield, 2010). Every time a user receives a notification (which most people leave turned on) they experience a small burst of anticipatory Dopamine release in the nucleus acumens and throughout several mesolimbic structures.   The anticipation of smartphone use actually activates the Dopamine response rapidly and this is experienced as a mild form of pleasure. Dopamine, along with other neurotransmitters, is associated with pleasure from numerous behaviors.

14.     There is a secondary release of Dopamine if the text or message is something desirable, important, or pleasurable when received.  Smartphone users utilize an unconscious form of defense to justify or rationalize (this is known as cognitive-dissonance) the behaviors displayed in distracted driving studies. Cognitive-dissonance explains the split between attitudes and beliefs acknowledging the dangers of smartphone use while driving and  actual actions and behaviors of smartphone use while driving.  Slot machines operate on a Variable Ratio Schedule of Reinforcement (i.e. one is rewarded unpredictably as to timing, what or how rewarding the experience will be).  Smartphones operate similarly, we receive information (texts) unpredictably, and we do not know what or how satisfying or discomfiting this information will be; therefore, this is why the vast majority of users check our smartphones over and over in an unconscious manner, e.g. compulsively.

15.     Twelve percent (12%) of people lie about texting and driving. Nine percent (9%) admit to having been in an accident or coming close to an accident while texting and driving. Approximately 22% of those surveyed would meet the criteria for compulsive use based on the Compulsive Smartphone Use scale I developed. There are probably several factors that account for texting while driving, including the experience of time distortion/dissociation (Greenfield, 1999 a,b; Lin, et al, 2015). There is a clear tendency for the experience of dissociation when using the Smartphone and the greater (more frequent the use) greater the distorted perception of time. This is highly relevant with regards to smartphone use and texting while driving in that one's ability to accurately perceive the amount of time it takes to pick-up the phone, read it, and/or reply is highly suspect. We have seen this same phenomenon with Internet use in general as well, which appears to be associated with the psychoactive properties elicited by such technology. It is also highly relevant because of the great distances travelled at highway speeds, even in 2-4 seconds of checking or reading a message or picking up a smart phone to manipulate it.

16.    Texting behavior is not volitional, nor psychological, it is neurobiological. Activation of the reward pathways likely inhibit the prefrontal cortex (identified in Figure 3 below) which is the area most responsible for issue of higher-order reasoning and judgment.  Very clear agreement exists in the relevant medical literature: reading texts while driving reduces a driver's capacity to maintain adequate attention and focus (Card, et al, 2014). In another study, found that texting while driving may be at least partially attributable to individuals' doing so "without awareness (unconsciously), adequate control, or attention and have little or no awareness of their intention to engage in a behavior that they would likely admit to be dangerous if asked."  (Bayer, et al, 2012).  These findings indicate that there is something potently psychoactive about the use of the smartphone and texting behavior, even when behind the wheel.   In the Bayer study this automatic/unconscious use was the largest factor accounting for the driver's texting behavior, even after accounting for norms, attitudes, and perceived behavioral control. In other words, smartphone users engage in this behavior because we are neurobiologically compelled to do so (Greenfield, 2015, 2012; Aljomaa, et al., 2016).



Figure 2 - Cycles of Internet/Smartphone Abuse & Addiction



Figure 3 – Relevant Neurological Mechanisms for Dopamine Release.

17.     When our brains are in an elevated dopamine state (caused by the
notification, expectation or viewing of a text, or status update) we have less higher-
cognitive and neuropsychological access. As with material found online that we find
desirable or pleasurable - the activated brain reward center shuts down access to
the prefrontal cortex where most of our judgment and reasoning occurs. This is
probably a primitive response associated with the activation of the pleasure-reward
circuits in the brain that are strongly associated with survival. In essence,
compulsive or addictive behaviors can and do overtake our ability to access
judgment in the frontal cortex.

18.     In this way, smartphones are affecting brain function - when one hears or feels the buzz or ping of an incoming text, social media update or email, our brains experience a release of dopamine, a chemical that leads to an increase in pleasure via various receptor points in the limbic system of the brain (See Figure 4 below).  This potent reward circuit in the brain impacts motivation and behavior and is involved in all behavioral or substance-based addictions.

# Dopaminergic- Serotonergic Neuropathways



Copyright 2016. Dr David Greenfield. All rights reserved

Figure 5 – Dopaminergic-Serotonergic Neuropathways.

19.     In basic terms, the expectation of a reward – who's texting me? who tagged me on social media?  what is in this email?– leads to a higher release of dopamine than the reward itself, in this case the text, email, or social media update, etc. It also forms a classical conditioning response where we associate the buzz, ping or notification received from our smartphones with the biochemical response of pleasure we get from the elevation of dopamine.  In essence the notification triggers a craving response centered in the Nucleus accumbens. Numerous neuroimaging studies have supported this process (Griffiths, et al, 2014). This neurobiological

reward association can be very resistant to extinction, meaning a user would have to dissociate pleasure from smartphone use for an extended period of time to end texting behavior associated with smartphones. This same reward association process (the variability, unpredictability, and anticipation of the reward) is exactly why gamblers in a casino will play a slot machine for hours on end.

20.      Data gathered from studies support my conclusions in relation to the compulsion/addiction behavior exhibited by smartphone users. In simulated driving experiments in the laboratory, evidence demonstrates that texting behavior clearly impacts driving behavior and performance, and this effect may be even worse for older drivers. (Rumschlag, et. al., 2015). Dr. Paul Atchley, associate professor of psychology at the University of Kansas, conducted a study on texting while driving. In a survey of 400 KU students, ninety seven percent (97%) said they were likely to initiate or respond to a text while driving. Within that percentage, seventy percent (70%) of the students said they initiate a text while driving, eighty percent (80%) said they reply and ninety two percent (92%) said they will read a text they have received. Within Atchley's research he also found texting behavior while driving, increases the risk of an accident by 2400 percent, which is six times more than drinking and driving and talking on the phone while driving.  According to Atchley, "The problem with texting and driving is it becomes an automatic behavior, though you may intend to not text and drive, if that text comes in you are going to read it and you are going to feel compelled to respond," (Atchley, et al, 2009).  Atchley also found that even though people believe that talking on a cellular phone while driving is dangerous, they will tend to initiate a cellular conversation if they believe that the call is important. This statement supports the Dopamine reared therapy wherein the driver will override all front-lobe judgments if they perceive the message or information is salient or desirable.

**Analysis of Kubiak Texting Behavior:**

21.    Based on the above scope of work in this case, I have divided my analysis and opinions relative to the conduct of Ms. Kubiak and the resulting motor vehicle crash accordingly:

i.    *Provide an opinion on whether or not in all reasonable probability, the act of message checking by Kubiak was likely the result of an involuntary response/compulsion due to the notifications emitted and availability of messaging in Ms. Kubiak's iPhone 5.*

22.    Given the current literature from distracted driving, Internet and Smartphone compulsion, traffic safety and law enforcement data, and the evidence currently available regarding the motor vehicle crash in question, I can state within a high degree of reasonable probability that Ms. Kubiak was likely responding to an unconscious and automatic, neurobiological compulsion to engage in texting behavior on her iPhone 5 while driving.

23.    Ms. Kubiak was likely unaware of her actions and behaviors immediately preceding the collision, which is typical of texting behavior while driving. Her action in using her smartphone likely has relatively little to do with her intention or skills as a driver, as in our research the majority of drivers admit to engaging in these behaviors.  It appears that she automatically and unconsciously looked down to read a text- which is the typical scenario that results in thousands of similar incidents.   The recorded interview conducted by Trooper Nichols at approximately the fourteen minute mark reveals the following statement from Ms. Kubiak:  "And then I believe another text came through, and I looked down, and the next thing I know I see the black vehicle with their brake lights on. And I tried to move out of the way, but was too late."   Shortly after the above statement, Ms. Kubiak stated that she was reading a text.

Exhibit R

24.     Under the best of circumstances this would take 2-5 seconds, which would allow ample time while driving to be distracted enough to result in a collision.  Therefore in my opinion, the sequence of events leading to the crash is quite simple, and clearly causally connected. In any given sense of the word "cause," the compulsion triggered by the notification from the iPhone 5, in conjunction with the compulsive act of reading the message delivered by Ms. Kubiak's iPhone 5, likely caused the immediately subsequent motor vehicle collision in question.

25.     It is an accepted principle in the field of behavioral science and technology addiction: we are not aware of how often or how long we are on our smartphones.  Most of us experience a sense of time distortion and dissociation so that we are unable to see how long we actually are distracted. In addition there are numerous studies that repeatedly demonstrate that our subjective perception of our distraction impairment is distorted, especially while the Dopamine reward pathways are enervated.  Further as previously noted, these deep limbic reward pathways are active, they inhibit access to the prefrontal, higher-order reasoning that helps in providing judgment and reasoning, and logical decision-making. We know that most drivers when not in the throes of such mesolimbic, dopaminergic reward activation will freely admit and comprehend the dangers of viewing or operating text or other data functions while driving, but once those notifications are fed to a driver by a smartphone, access to these higher-cortical brain centers diminish.

26.     The iPhone 5 had texting and messaging capability, and default settings to deliver notifications of messages when received.  It is well within reasonable probability that this capability could only facilitate the automatic/involuntary and/or compulsive response that resulted in her reading the message provided to her by her iPhone 5 while driving at highway speeds. The combination of ease-of-access, unfettered availability, and the notifications activating the anticipatory Dopamine response, along with secondary reward from the saliency (i.e. importance/desirability) of the message would reasonably result in her response to the notification and subsequent texting behavior.

16

Exhibit R

27.     It is highly likely that Ms. Kubiak was acting compulsively in response to the incoming notification on her iPhone 5 - just as the majority of drivers admit to in our research as well as the research of others in this field.  It is highly probable that such notifications activate the anticipatory reward pathways in the mesolimbic structures and start the compulsive cascade of behavior that led to her using the iPhone 5 while driving at highway speeds.

28.     The notification component is critical, in that anticipation of pleasurable or salient behavior spikes dopamine followed by a secondary smaller elevation. Any behavior that elicits dopaminergic elevation will likely be repeated and has the potential to create a compulsive use pattern, irrespective other whether the Smartphone user is located in a car or not. The issue here is that these neurobiological factors do not cease when smartphone users enter an automobile to drive.

ii.     *Provide an opinion on whether or not, in all reasonable probability, an involuntary lock-out mechanism identified by plaintiffs as a safer alternative (like the one invented by Apple in the '143 patent) would have likely prevented or significantly reduced the act of message checking that occurred in the instant case.*

29.     It is reasonably probable that any electronic mechanism or device that blocks or prevents the provision of messaging notifications, and the ability to use distracting functions, should prevent or reduce the likelihood of texting behavior. There are numerous free-standing programs, applications and devices that do similar functions but these programs are severely limited in that they are controlled by the user/driver and can be turned off or eliminated if the driver so chose.  As I understand the safer alternative design proposed by the Plaintiffs in this case (as well as Apple's '143 patent), if the safer alternative design would have been implemented by Apple, Kubiak would not have received notification of an incoming message, and likely would have not been compelled or able to engage in reading a message on her iPhone 5 while driving at highway speeds.

Because of the compulsive nature and unconscious/automated response pattern of smartphone notifications and corresponding use, had there been technology operating in the phone appropriately to prevent the provision of notifications of incoming messages, and the inability to read messages, this would likely have blocked the type of use of Ms. Kubiak's iPhone 5 which occurred immediately before the crash in question.

30.     There are hundreds of cases of distracted driving deaths and injuries (8 deaths and a 1000 injuries per day), and the majority of them are due to smartphone use. In the majority of cases individuals had no previous issues with their driving behavior but the smartphone acts similar to a psycho-active drug (or rather activates the brains own pleasure neurotransmitter, Dopamine) which alters mood, consciousness, and judgment and evokes these dopaminergic-based compulsive reactions to notifications emitted by smartphones.

iii.     *Provide an opinion on whether or not Apple, through its manufacturing, design, and marketing of the iPhone 5, likely encouraged or exacerbated the rate- of- incidence of the act of message checking while driving.*

31.     It is my understanding that the default settings of the iPhone 5 are set to automatically provide notifications of messages, unless a user specifically and intentionally goes through the settings menu to turn off notifications. It is reasonably probable that any electronic mechanism or device that blocks or prevents the provision of messaging notifications, and the ability to use distracting functions, such as the Messages application on the iPhone 5, should prevent or reduce the likelihood of texting behavior. There are numerous free-standing programs, applications and devices that do similar functions but these programs are severely limited in that they are controlled by the user/driver and can be turned off or eliminated if the driver so chose.

32.     As I understand the safer alternative design proposed by the Plaintiffs in this case (as well as Apple's '143 patent), if the safer alternative design would have been implemented by Apple, Kubiak would not have received notification of an incoming message, and likely would have not been compelled or able to engage in reading a message on her iPhone 5 while driving at highway speeds.

33.     I cannot speak as to Apple's intentions with regard to encouraging texting/message checking and sending while driving; however, it is my opinion that any hard-wired, device-based technology of some type that could have been utilized but was not, in essence encourages or exacerbates texting behavior.

34.     It is my understanding the iPhone 5 was technologically capable from both a hardware and software standpoint to perform all the steps of plaintiffs' safer alternative design.  Simply put, the safer alternative design as I understand it, would have automatically engaged once a predetermined threshold speed was reached and detected by the iPhone 5.  Once the speed threshold was detected, notifications would be disabled, and then a scenery analyzer, (utilizing the front and rear facing cameras, as well as the accelerometer on the iPhone 5) would have engaged to determine whether the user of the smartphone was located in the driver's seat.  If meeting the criteria of travelling above threshold speed, and location in the driver's seat, the iPhone 5 would have engaged a lock-out mechanism to prevent use of applications determined to be unsafe to use while driving.

35.     Such a safer alternative design identified by plaintiffs, which according to my understanding encompasses Apple's invention in the '143 patent, would have likely prevented the texting behavior that occurred immediately before the collision in question, and was the likely cause of the collision in question.  This opinion is based on my work in the field of behavioral science, technology addiction, and distracted driving, as well as the peer reviewed work of others in this field.

36.     The relevant data and literature in this field repeatedly demonstrate that people often cannot resist reading, reviewing, and sending messages/texts once notifications are received while driving. The safer alternative design to address and prevent this texting behavior would likely be well received by consumers, since there are numerous studies where it was found that people would welcome a "technology-based" control or limitation to smartphone use while driving (AT&T's "IT Can't Study" Greenfield, 2014; & Telemaque, et al., 2015).

## V. Information Reviewed

In preparation to provide this declaration and render the above opinions, I reviewed the following information related to the motor vehicle collision in question:

- Texas Department of Public Safety Deposition on Written Questions and attached records including:

    o   Texas Highway Patrol Division Offense Report dated May 15, 2013

    o   Texas Highway Patrol Division, Major Crash Investigation dated August 20, 2013

    o   Crash Scene Video

    o   Ashley Kubiak Interview

    o   Crash Scene Photos

- United States Patent Number 8,706, 143

- Plaintiff's First Amended Complaint and Exhibits

In preparation to provide this declaration and render the above opinions, I reviewed and/or utilized the following information, studies, and/or statistics related to the field of distracted driving through the use of smartphones:

- 2014 AT&T It Can Wait Survey Report, Greenfield et al. 2014

- "The link between texting and motor vehicle collision frequency in the orthopaedic trauma population," Issar, NM et. al, *Journal of Injury & Violence*, June 2013; 5(2): 95-100

- "Addressing the Texting and Driving Epidemic: Mortality Salience Priming Effect on Attitudes and Behavioral Intentions," Kareklas and Muehling, *Journal of Consumer Affairs,* Summer 2014; Volume 48, Number 2, pp 223-250

- "Latent class analysis on internet and smartphone addiction in college students," Mok, Jung-Yeon, *Neuropsychiatric Disease and Treatment*, May 2014, Dove Press

- "Objective assessment of the effect of texting while driving: a simulator study," Bendak, S., *International Journal of Injury Control and Safety Promotion,* 22:4, 387-392

- "Texting and driving," Moreno, M., *JAMA Pediatric Patients Page*, www.jamapediatrics.com

- "Post and During Event Effect of Cell Phone Talking and Texting on Driving Performance – A Driving Simulator Study," Thapa, R., et. al., 2015, *Traffic Injury Prevention,* 16:5, 461-467

- "I need my smartphone: A hierarchical model of personality and cell-phone addiction," Roberts, J.A., et. al., *Personality and Individual Differences,* Feb. 2015, 79: 13-19

- "Modeling habitual and addictive smartphone behavior: The role of smartphone usage types, emotional intelligence, social stress, self-regulation, age, and gender," Alexander, J.A.M., et. al., *Computers in Human Behavior,* Jan. 2015, 45: 411-420

- "The relationship between life stress and smartphone addiction on a Taiwanese university student: A mediation model of learning self-efficacy and social self-efficacy," Shao-I, Chiu, *Computers in Human Behavior,* Feb. 2014, 34: 49-57

- "Smartphone addiction among university students in light of some variables," Suliman, S.A., et. al., *Computers in Human Behavior,* Mar. 2016, 61: 155-164

- "Smartphone addiction and its relationship with social anxiety and loneliness," Darcin, A.E., et. al., *Behaviour & Information Technology,* 2016, 35: 7, 520-525

Exhibit R

- "Time distortion associated with smartphone addiction: Identifying smartphone addiction via a mobile application," Lin, Yu-Hsuan, et. al. *Journal of Psychiatric Research,* April 2015, 65: 139-145

- "A systemic Smartphone Usage Pattern Analysis: Focusing on Smartphone Addiction Issues," Ahn, H., et. al., *International Journal of Multimedia and Ubiquitous Egineering,* 2014, Vol. 9, No. 6, pp. 9-14

- "Texting and Drving: Can it be Explained by the General Theory of Crime?," Quisenberry, P.N., *American Journal of Criminal Justice,* 2015, 40: 303-316

- "Texting while driving: the development and validation of the distracted driving survey and risk score among young adults," Bergmark, R.W., et. al., *Injury Epidemiology,* 2016, 3:7

- "Mutual interferences of driving and texting performance," He, J., *Computers in Human Behavior,* 2015, 52: 115-123

- "Texting While Driving and Other Risky Motor Vehicle Behaviors Among US High School Students," Olsen, E.O., et. al., *Pediatrics,* June 2013, Vol. 131, No. 6.

- "Cell Phoning and Texting While Driving: Multitasking Ourselves to Death," Telemaque, J.H.R., et. al., *SAGE Open Access,* 2015: 1-5

- "Texting while driving as impulsive choice: A behavioral economic analysis," Hayashi, Y., et. al., *Accident Analysis and Prevention,* 2015, 83: 182-189

- "The effects of texting on driving performance in a driving simulator: The influence of driver age," Rumschlag, G., et. al., *Accident Analysis and Prevention,* 2015, 74: 145-149

- "Texting while driving on automatic: Consider the frequency-independent side of habit," Bayer & Campbell, *Computers in Human Behavior, 2012, 28: 2083-2090*

- "A meta-analysis of the effects of texting on driving," Caird, J.K., et. al., *Accident Analysis and Prevention, 2014, 71: 311-318*

- "Compulsive Cell Phone Use and History of Motor Vehicle Crash," O'Connor, S., et. al., *Journal of Adolescent Health, (2013), 53: 512-519*

- "Habits make smartphone use more pervasive," Oulasvirta, A., et. al., *Pers Ubiquit Comput,* 2011

Exhibit R

- "What is the role of dopamine in reward: hedonic impact, reward learning, or incentive salience?," Berridge & Robinson, *Brain Research Reviews,* 1998, 28: 309-369

- "The nature of internet: psychological factors in compulsive internet use," Greenfield, D. N., *Paper presentation at the 1999 American Psychological Association Convention*, Boston, Massachusetts, (1999a)

- "Psychological characteristics of compulsive internet use: a preliminary analysis," Greenfield, D.N., *CyberPsychology & Behavior*, 8(5), 403-412.

- "What makes internet use addictive?" Greenfield, D.N., In K. Young & Abreu, C.N. *Internet Addiction: a handbook for evaluation and treatment*. Wiley: New York

- "A meta-analysis of the effects of texting on driving," Caird, J., et. al., *Accident Analysis and Prevention,* (2014), 71:311-318

- "Smartphone addiction among university students in the light of some variables," Aijomaa, S., et. al., *Computers in Human Behavior,* 2016, 61:155-164

- "Internet and gaming addiction: a systematic literature review of neuroimaging studies",  Kuss & Griffiths, *Brain Sciences,* 2012, 347-374

- "Virtual addiction: why we become addicted to the internet and digital media technology?," Greenfield, D.N., 1st International Congress on Technology Addiction, Istanbul, Turkey

- "Internet use disorder: clinical and treatment implications of compulsive internet and video game use in adolescents," Greenfield, D.N. *Addictions and the Adolescent Brain,* Child and Adolescent Psychiatric Society of Greater Washington Spring Symposium,  Suburban Hospital, Bethesda, Maryland

- "The choice to text and drive in younger drivers: behavior may shape attitude", Atchley, P., et. al., *Accident Analysis and Prevention, 2011, 43:134-142*

- Statistics and Analysis from Distraction.gov

## VI.  Relevant Statistics Related to Distracted Driving[1]:

Relevant statistics from the National Highway Traffic Safety Administration (NHTSA), CTIA – The Wireless Association, and other organizations appear below:

  i.    3,179 people were killed in 2013, and 431,000 injured in motor vehicle crashes involving distracted driving.

  ii.   169.3 billion text messages were sent in the U.S., month over month, as of December 2014.

  iii.  Ten percent (10%) of all drivers 15 to 19 years of age, involved in fatal crashes were reported as distracted at the time of the crashes. This age group has the largest proportion of drivers who were distracted at the time of the crashes.

  iv.   Drivers in their twenties are twenty-three percent (23%) of drivers in all fatal crashes, but are twenty seven percent (27%) of the distracted drivers, and thirty-eight percent (38%) of the distracted drivers who were using cell phones in fatal crashes.

  v.    The percentage of drivers text-messaging or visibly manipulating handheld devices increased from 1.7 percent in 2013 to 2.2 percent in 2014.   Since 2007, young drivers (ages 16 to 24) have been observed manipulating electronic devices at higher rates than older drivers.

  vi.   At any given daylight moment across America, approximately 660,000 drivers are using cell phones or manipulating electronic devices while driving, a number that has held steady since 2010.

  vii.  A 2015 Erie Insurance distracted driving survey reported that, among various dangerous distracted driving behaviors, one-third of drivers admitted to texting while driving, and three-quarters say they've seen others do it.

  viii. Five seconds is the average time your eyes are off the road while texting. When traveling at 55 mph, that's enough time to cover the length of a football field blindfolded.

---

[1] These statistics can be found and are cited by the official U.S. Government Website for Distracted Driving – www.distraction.gov (http://www.distraction.gov/stats-research-laws/facts-and-statistics.html).

ix.  Smartphone ownership is growing. In 2011, fifty two percent (52%) of drivers reported owning a smartphone, and by 2014 that number had grown to eighty percent (80%). The greatest increases in smartphone ownership are among adults forty and older.

x.  More than half (53%) of all adult cell phone owners have been on the giving or receiving end of a distracted walking encounter.

I reserve the right to supplement, modify or expand the scope of data discussed, as well as the opinions herein, should additional information be provided to or discovered by me.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  August 26, 2015

David Greenfield, Ph.D.

Exhibit 1

**Exhibit 1**



_____

# Dr. David Greenfield
## The Center for Internet and Technology Addiction
### 17 South Highland Street
### West Hartford, Connecticut  06119
### Tel: 860-561-8727  Fax: 860-561-8424
### Email: drdave@virtual-addiction.com

## CLINICAL INTERESTS AND SPECIALTIES

Compulsive use of the Internet and digital technology; neurobiology and neuropharmacology of computer, Internet, and video game use, technology and its impact on the family; The evolutionary biology of addiction; Smartphone use and distracted driving; Technology abuse issues in business and legal arenas; _Treatment specialties in_: Addiction medicine and sexual medicine, Compulsive online sexual and video gaming behavior, EMDR treatment, and Imago relationship psychotherapy. Attending supervising doctor/Assistant Clinical Professor, Department of Psychiatry, University of Connecticut, School of Medicine.

## EDUCATIONAL BACKGROUND

| | | |
|---|---|---|
| M.S. | 2016 | Clinical Psychopharmacology,  Post-Doctoral Training Program  (expected) |
| Ph.D. | 1986 | Counseling Psychology (APA Approved)<br>Minor:  Marriage, Family & Child Therapy<br>Texas Tech University, Department of Psychological Sciences<br>Lubbock, TX |
| M.A. | 1980 | Counseling Psychology<br>New York University<br>New York, NY |
| B.A. | 1978 | Psychology, with honors<br>Ramapo College of New Jersey<br>Mahwah, NJ |

Dr. David N. Greenfield                    Exhibit R                                    2

## LICENSURE/BOARD CERTIFICATIONS

- Connecticut Licensed Psychologist                    #001399
- New York Licensed Psychologist                       #009628
- Connecticut Licensed Marriage & Family Therapist     #000558
- Certificate of Proficiency in Addictions,  APA College of Professional Psychology #AD001519
- National Register of Health Service Providers in Psychology      #40025
- Certificate of Professional Qualification in Psychology        #3443
- EMDR Level I & II & Advanced Training
- CATSO - Connecticut Association for the Treatment of Sexual Offenders
- Member, American Society of Addiction Medicine

## HOSPITAL STAFF AFFILIATION

| | |
|---|---|
| 2000 --  Present | John Dempsey Hospital<br>University of Connecticut Health Center |
| 10/94 – Present | Hartford Hospital, Hartford, CT<br>Medical Staff– Dept. of Psychiatry |
| 6/94 – Present | Mt. Sinai / St. Francis Hospitals; Hartford, CT<br>The Center for Behavioral Health<br>Associate professional staff , Adjunct medical staff – Mt. Sinai Hospital |
| 1/92 – 10/94 | Institute of Living; Hartford, CT<br>Courtesy psychology staff |
| 7/90 – 7/92<br>9/94 – closing | Elmcrest Psychiatric Institute; Portland, CT<br>Medical staff, courtesy privileges |

## PROFESSIONAL AFFILIATIONS/MEMBERSHIPS

- Member, Sexual Medicine Society of North America
- Member, International Society for Sexual Medicine
- Member, American Society of Addiction Medicine
- Member,  American Society for the Advancement of Pharmacotherapy
- Member, American Psychological Association
- Fellow, Past-President: Connecticut Psychological Association; Member Forensics Division
- Assistant Clinical Professor of Psychiatry, University of Connecticut School of Medicine
- National Register for Health Service Providers in Psychology
- Clinical Member, CATSO - Connecticut Association for the Treatment of Sexual Offenders

## PUBLICATIONS AND PRESENTATIONS

Greenfield, D.N. (2016) Internet and Technology Addiction: Are we controlling our devices or are they controlling us? Keynote address at the National Association of Social Workers, South Dakota Conference, Sioux Fall, South Dakota.

Greenfield, D.N. (2016) Cybersex: The shadow side of the Internet. Presentation at the National Association of Social Workers, South Dakota Conference, Sioux Falls, South Dakota.

Greenfield, D.N. (2015) The driving force: why we continue to use digital technology behind the wheel. New York Highway Safety Annual Fall Symposium, Binghamton, New York.

Greenfield, D.N. (2015) Virtual Addiction: Living in the Age of Digital Distraction. Digital Citizenship Summit, University of Saint Joseph, West Hartford, Connecticut.

.
Greenfield, D.N. (2015) Internet and Digital Technology: How to Live with it, When you Can't Live Without it. Georgia Tri-Country U.S. Probation Conference, Pine Mountain, Georgia.

Atchley, P., Bayer, J. Greenfield, D.N. & Richtel, M. (2015) Attention and Distraction and Smartphone Technology, Neuroscience Session at 3rd Annual Virginia Distracted Driving Summit, Virginia Beach, Virginia.

Greenfield, D.N. (2015) Internet Use Disorder: Clinical and Treatment Implications of Compulsive Internet and Video Game Use in Adolescents. Child & Adolescent Psychiatric Society of Greater Washington Spring Symposium, *Addictions and the Adolescent Brain*, Suburban Hospital, Bethesda, Maryland.

Greenfield, D.N. (2014) Virtual Addiction: Digital Media, Internet, Technology— Clinical Issues and Explorations. Full day CME training for The Brattleboro Retreat and Hospital, Brattleboro, Vermont.

Greenfield, D.N. (2014) Internet Use Disorder: Clinical and Treatment Implications of Compulsive Internet and Video Game Use in Adolescents. Manuscript in preparation.

Greenfield, D. N. (2014) Virtual Addiction: Internet, Cybersex, and Gaming Addiction. 3-Day clinical training to attending doctors and staff therapists. National Addictions Management Service (NAMS), National Hospital, Institute of Mental Health, Singapore.

Greenfield, D.N. (2013) Raising Generation-D: What Parents Need to Know About Children, Tweens, and Teens and Digital Devices, DVD.

Greenfield, D.N. (2013) Violence on the Internet and Digital Media. Presentation at Middlesex Community College Forum on Violence and the Media, Middletown, Connecticut.

Greenfield, D.N. (2013) Technology: Friend or Foe? Or is it just my Frenemy? Presentation to the Connard High School, Community of Concern on Youth and Risky Behavior, West Hartford, Connecticut.

Greenfield, D.N. (2013) Internet Addiction: Shaping the Conduct of Those Who Suffer Addictions Presentation at the Winter Seminar of The Georgia Association of Criminal Defense Lawyers, Atlanta, Georgia.

Dr. David N. Greenfield Exhibit R 4

Greenfield, D.N. (2013) <u>Internet and Digital Technology Addiction: A Clinical Perspective</u>, Grand Rounds Presentation, Department of Psychiatry, University of Connecticut School of Medicine, Farmington, Connecticut.

Greenfield, D.N. (2013) <u>Clinical Treatment of Internet and Technology Addictions: A CE/CME Program for Mental Health and Addictions Professionals</u>, DVD.

Greenfield, D.N. (2013) <u>Virtual Addiction: Our Youth in the Age of the Internet and Digital Media.</u> Presentation to the West Hartford Substance Abuse Prevention Commission, West Hartford, Connecticut.

Greenfield, D.N. (2013) <u>Internet and Sexual Behavior</u>, Continuing Education Presentation, the Connecticut Association for the Treatment of Sexual Offenders (CATSO), Middletown, Connecticut.

Greenfield, D.N. (2012) <u>Internet Addiction and Digital Media Abuse.</u> Presentation to Psychiatry Residency Program, University of Connecticut School of Medicine, Farmington, Connecticut.

Greenfield, D.N. (2012) <u>Internet and Digital Media Addiction: A Family Issue.</u> Grand Rounds Presentation, St. Francis Hospital, Department of Family Medicine, Hartford, Connecticut.

Greenfield, D.N. (2012) <u>Cybersex, Internet and Pornography Addiction.</u> Continuing Education Presentation, Connecticut Association for the Treatment of Sexual Offenders (CATSO), Middletown, Connecticut.

Atchley, P; Greenfield, D.N.; Schick, A. & Teater, J. (2012) <u>Our Need to Stay Connected: Is it an Addiction and What Challenges Does that Present to the Traffic Safety Community</u>? 2012 LifeSavers Traffic Safety Conference, Orlando, Florida.

Greenfield, D.N. (2012) <u>Virtual Addiction: Digital Media, Internet, and Technology Addictions-- Clinical Issues and Explorations. Continuing education program for CT chapter of NASW</u>, Cromwell, Connecticut.

Greenfield, D.N. (2012) <u>Digital Media Addiction: Considerations for Internet, Texting, Social Media and Video Game use</u>. Hall High School, West Hartford, Connecticut.

Greenfield, D.N. (2012) <u>Virtual Addiction: Why We Become Addicted To the Internet and Digital Media Technology</u>? 1ST International Congress on Technology Addiction, Istanbul, Turkey

Greenfield, D. N. (2011) <u>Virtual Addiction: Digital Media and Internet-Enabled Sexual Behavior: Clinical Issues and Explorations. Six-hour continuing education workshop</u>, Vermont Psychological Association annual convention, Montpellier, Vermont.

Greenfield, D.N. (2010) <u>Treating Internet and Digital Media Problems</u>. Northeast Health Services, Taunton, Massachusetts.

Greenfield, D.N. (2010) <u>The Virtual World: Considerations for Internet and Digital Media Addiction</u>. The Connecticut Association for Addictions Professionals, Naugatuck Valley Community College, Waterbury, Connecticut.

Greenfield, D. N. (2010a,b) a. <u>Internet and Digital Media Problems</u>, b. <u>Internet and Computer safety</u>. St. James Episcopal Church, Glastonbury. Connecticut.

Greenfield, D.N. *What Makes Internet Use Addictive?* (2010) In K. Young & Abreu, C.N. Internet Addiction:  a handbook for evaluation and treatment. Wiley: New York.

Greenfield, D. (2009). *¿Cómo tratar la adicción a Internet?* In E. Echeburúa, F.J. Labrador y E. Becoña (Eds.), *Adicción a las nuevas tecnologías en adolescentes y jóvenes*. Madrid: Pirámide

Greenfield, D. (2009) Games People Play: Considerations for Internet and video gaming. Presentation, July 3, Berlin Germany.

Greenfield, D.N. (2009) Virtual Addiction: Clinical Implications of Internet and Digitally-Enabled Behavior, Process Addictions: approaches for professionals, Las Vegas, Nevada.

Greenfield, D.N. (2009) Internet and Digital Addiction, Central Connecticut State University, New Britain, Connecticut.

Greenfield, D.N. (2009) Living in a virtual world: global implications of digital addiction, Berliner Mediensuch-Konferenz –Beratung und Behandlung für mediengefährdete und –geschädigte Menschen, Berlin 6-7 März 2009Berlin, Germany.

Greenfield, D.N. (2008) Pastoring in the midst of Pornography. Clergy training for Episcopal Diocese of Connecticut, Bloomfield & Greenwich, Connecticut.

Greenfield, D.N. (2008) Games People Play: Is Virtual Simulation the Next Worst Thing to Reality? National Security Agency, Washington, DC.

Greenfield, D.N. (2008) Virtual Addiction: Clinical Implications of Digital & Internet-Enabled Behavior. Presentation at International Conference Course about New Technologies: Addiction to new Technologies in adolescents and young people, Auditorium Clinic Hospital, Madrid, Spain.

Greenfield, D. N. (2007) Games people play: virtual asset or affliction. Virtual Worlds Conference: Invited speaker, Columbia University, Institute for Tele-Information, Columbia Business School, New York.

Greenfield, D.N. (2006) Untangling the web of addictions: a mental health focus. Featured speaker, Rhode Island Psychological Association, Warwick, Rhode Island.

Greenfield, D.N. & Shelby M. (2006)   How to manage the Internet so it doesn't manage you. Housatonic Valley Regional High School, Falls Village, Connecticut.


Greenfield, D.N. & Shelby, M. (2006) Seminar and Intensive workshop for treatment and prevention of Internet addiction for social workers or counselors, Hong Kong Council for social Services, Hong Kong.

Greenfield, D.N. Caught in the Web:  How Internet Addiction Impacts our Lives. Co-sponsored with UJA/Federation of Greenwich and JFS of Stamford, Bruce Museum, Stamford, Connecticut.

Greenfield, D.N. Diagnosis and Treatment of Internet Addictions.  Professional workshop for Jewish family Services, Stamford, Connecticut.


Greenfield, D.N. (2006) The Net Effect: The Shadow Side of Digital Technology. Keynote presentation to the Beyond Technology conference, Springfield, Massachusetts.

Greenfield, D.N. (2006) <u>Energy Medicine in Addictions Treatment</u>. Presentation to The Massachusetts Council on Compulsive Gambling conference on: Spirituality and other non-traditional approaches to treatment, Fall River, Massachusetts.

Greenfield, D.N. (2006) <u>The Internet, Sex, and Gambling: A World Wide Web of Addictions.</u> <u>Presentation to</u> Quinnipiac University's Mass Communications Department and The Connecticut Council on Problem Gambling, Quinnipiac University, Wallingford, Connecticut.

Greenfield, D.N. (2006) <u>Virtual-addiction: Implications of Internet-enabled behavior</u>. Presentation to the Harvard Medical School, Department of Continuing Education conference on *Treating the Addictions*, Boston, Massachusetts.

Greenfield, D.N. (2006) <u>The Net Effect: Is virtual connection really good for us?</u> Keynote presentation to Paperclip communications, conference on *Cyber-profiles*, held at Montclair State University, Montclair, New Jersey.

Greenfield, D.N. (2005) <u>Cyber-addictions</u>. Presentation to the Ontario Association of Consultants, Cousellors, Psychometrists, and Psychotherapists. Ontario, Canada.

Greenfield, D.N. (2005) <u>Virtual Addiction: Attraction or Affliction of the Digital Age?</u> Presentation to the Minnesota Social Service Association 112th Annual Training Conference, "Conquering Change--Together We Achieve More, Minneapolis, Minnesota.

Greenfield, D.N. (2005) Roundtable for The Pfizer Journal entitled: "<u>Addiction: New Science, New</u> <u>Hope</u>."  February 24-25, 2005, Miami, Florida.

Greenfield, D.N. (2004) T r e a t m e n t  of Internet-Enabled Compulsive Sexual Behavior on Marital and Significant Relationships. Presentation to the University of Connecticut, School of Medicine, Department of Psychiatry, Annual Psychiatric Residents Meeting.

Greenfield, D.N. (2003) <u>Treatment of Internet-Enabled Compulsive Sexual Behavior on Marital and</u> <u>Significant Relationships.</u> Audio taped presentation for Continuing Education for the National Association of Social Workers- Massachusetts Chapter.

Greenfield, D.N. (2003) Virtual Addiction: Sometimes New Technologies Create New Problems. In Mitchell, M.E. & Andrews, L.B. (Eds.) <u>The Technology of Humanity: Can Technology Contribute to</u> <u>the Quality of Life?</u> Illinois Institute of Technology, Chicago, Illinois.

Greenfield, D.N. (2003) <u>Internet Dating: Looking for Love at Light Speed.</u> The California Psychologist. May/June, 2003.

Greenfield, D.N. & Gordon, B.L. (2002) <u>Cybersex and Cyber affairs</u>.  Presentation at the 2002 meeting of the American Psychological Association, Chicago, Illinois.

Greenfield, D.N. & David, R.A. (2002) <u>Lost in cyberspace: Internet abuse in the workplace.</u> CyberPsychology and Behavior, 5, number 4.

Greenfield, D.N. & Orzack. M. H. (2002) The Electronic Bedroom: Clinical Assessment for Online Sexual Problems and Internet-Enabled Sexual Behavior. In Cooper, A. (Eds.) <u>Sex and the Internet: A</u> <u>Guidebook for Clinicians.</u> John Wiley and Sons: New York.

Greenfield, D.N. (2001) Hooked On-Line: Understanding and Treating Internet Addiction. Presentation to the Mental Health Association of Franklin Country, Columbus, Ohio.

Greenfield, D.N. ( 2001) Compulsive Internet Use: Considerations in Clinical Practice. Presentation to the Behavioral Health Service, Group Health Cooperative, Seattle, Washington.

Greenfield, D. N. (2001) E-Productivity summit: the Internet in the workplace. Sponsored by Websense: New York, New York.

Greenfield, D.N. (2001) Compulsive Internet Use: Considerations in Clinical Practice. Presentation to the Oregon Psychological Association, Portland Oregon.

Greenfield, D.N. (2001) Sexuality and the Internet. Counselor, 2, 62-63.

Greenfield, D.N. (2000) Internet Addiction. In Fanning, P and McKay, M. (Eds.), Family Guide to Emotional Wellness. (pp.301-308). New Harbinger Publications: Oakland.

Greenfield, D.N. (2000) Lost in Cyberspace: Compulsive Internet Use as Social Isolation or Social Connection. Invited Presentation to the American Sociological Association Convention, Washington, D.C.

Greenfield, D.N. (2000)  Cybersex and Cyber-Affairs: Digital Dating and the Electronic Bedroom. Paper Presentation at the 2000 annual meeting of the American Psychological Association, Washington, D.C.

Greenfield, D.N. (2000)  Compulsive Internet Use: Considerations in Clinical Practice. Workshop Presentation to the Illinois Psychological Association, Chicago, Illinois.

Greenfield, D.N. (2000) Compulsive Internet Use: Considerations in Clinical Practice. Workshop Presentation to "The Center", Hartford, Connecticut.

Greenfield, D.N. (2000) Safe in Cyberspace. Presentation to the Avon Public Schools PTA, Avon, Connecticut.

Greenfield, D.N. (2000)  E-Productivity Summit.: the Internet and the workplace: Sponsored by Websense, Inc. San Diego, California.

Greenfield, D.N. (2000) Internet Addiction: Considerations in Clinical Practice. Presentation at St. Francis Care Behavioral Health (formally Elmcrest Psychiatric Institute), Portland, Connecticut.

Greenfield, D.N. (2000)  Safe in Cyberspace: Preparing Parents and Children for the Internet. Presentation to the Social Service league of Cohasset, Inc.

Greenfield, D. N. (2000)  Compulsive Internet Use in the Workplace. Presentation to the Connecticut Chapter, Employee Assistance Association, West Hartford, Connecticut.

Greenfield, D.N. (2000) Perils and Pitfalls of Cyber-Living: Research and Clinical Findings. Presentation at Mt Holyoke College, South Hadley, Massachusetts.

Greenfield, D. N. (2000) the Nature of Internet Addiction: Psychological Factors in Compulsive Internet Behavior. Journal of eCommerce and Psychology, 1, Number 2.

Greenfield, D.N. (2000) Lost in Cyberspace: The Growing Problem of Compulsive Internet Use.

Paradigm Magazine.

Cooper, A., Boies, S., Maheu, M., & Greenfield, D. (2000) Sexuality and the Internet: The next sexual revolution.  In Muscarella, F. and Szuchman, L. (Eds.), <u>Psychological Perspectives on Human Sexuality: A Research Based Approach </u>(pp. 519-545). John Wiley and Sons, Inc.: New York.

Greenfield, David N. (1999).  <u>The Nature of Internet Addiction: Psychological Factors in Compulsive Internet Use</u>. Paper Presentation at 1999 American Psychological Association Convention. Greenfield, D.N. (1999).

Greenfield, D. N. (1999) Psychological Characteristics of Compulsive Internet Use: A Preliminary Analysis. <u>CyberPsychology and Behavior</u>, 8, Number 5.

Greenfield, D.N. (1999) <u>Virtual Addiction: Help for Netheads, Cyberfreaks, and Those Who Love Them</u>. New Harbinger Publications: Oakland.

Greenfield, D.N. (1998)  <u>Taming Your Cybertooth Tiger:  Living in the Age of Internet Addiction.</u> Presentation at the Annual Meetings of the Connecticut Psychological Association; Hartford, CT.

Cooper, A, Maheau, M., and Greenfield, D.N. (1998)  <u>Internet Addiction</u>.  Presentation at the 1998 meetings of the American Psychological Association; San Francisco, CA.

Korwin, M.B., Greenfield, D.N., Magin, A., Esposito, J. & Holtzberg, G. (1998)  <u>Children, Parenting, and Divorce</u>. Manuscript in progress.

Magin, A. and Greenfield, D.N. (1995-1998)  <u>Focus on Mental Health.</u> Guest co-hosts on monthly radio talk show, Connecticut mental Health Association; Hartford, CT.

Greenfield, D.N. (1996) <u>Getting Off On-Line: Life in the Age of the Electronic Bedroom.</u> Presentation at the Connecticut Academy of Physician Assistants; Rocky Hill, CT.

Greenfield, D.N., Acuff, C., Reynolds, R.F., Rzepski, b., Hiebel, D.J., Augenbraun, H., Kaplan, M.E., Sutton, R., Beebe, J.P., and Gilstein, K.W. (1995)  <u>Introduction to Hospital Practice I and II</u>. Presentation at the 9th Annual Convention of the Connecticut Psychological Association meeting; Rocky Hill, CT.

Greenfield, D.N. (1995)  <u>EMDR – Eye Movement Desensitization and Reprocessing: An Introduction to Theory and Practice</u>.  Presentation at the North Cape Code Symposium on Addictive Disorders.

Greenfield, D.N. (1995)  <u>Solution-Focused Approaches to Psychotherapy: Using Therapeutic Challenges</u>.  Presentation to the 1995 American Psychological Association Convention, New York.

Greenfield, D.N. (1995)  <u>Practice & Profit:  Growth Opportunities for  Psychologists in  the  90's </u>. Presentation to the 1995 American Psychological Association Convention, New York.

Greenfield, D.N. and Esposito, J.B. (1995)  <u>Stress & Systemic Lupus</u>.  Presentation at Danbury Hospital.

Greenfield, D.N. (1995)  <u>Hospital Practice – The Time has Come</u>.  Presentation at the Region I meeting of the Connecticut Psychological Association, The Village for Families and Children; Hartford, CT.

Greenfield, D.N. (1995)  Public testimony on "Hospital Practice for Psychology."  Connecticut State Legislative, Public Health Committee; Hartford, CT.

Greenfield, D.N. (1995)  Marketing and Practice Development: The Practice of Business and the
Business of Practice.  Workshop presentation at Ashbrook Center for Brief Therapies; Monroe, CT.

Greenfield, D.N. (1995)  Hospital Practice for Psychology in Connecticut.  Presentation at Elmcrest
Psychiatric Institute; Portland, CT.

Greenfield, D.N., Korwin, M.B., and Esposito, J. (1995)  Solution-Focused Therapy in Clinical Practice.
Presentation at Danbury Hospital, Department of Psychiatry, Grand Rounds; Danbury, CT.

Greenfield, D.N. (1995)  Solution-Focused Psychotherapy.  Presentation to Personal Performance
Consultants, clinical staff; Danbury, CT.

Greenfield, D.N. (1994)  Solution-Focused Psychotherapy – I f  I t 's  Not  Bro ken,  Why  F ix  I
t ? Presentation at the 1994 Convention of the American Psychological Association; Los Angeles,
CA.

Greenfield, D.N., and Rooney, A. (1994)  Asserting the Psychologist Role: Expanding Opportunities in
Healthcare Settings.  Presentation at the 1994 Convention of the American Psychological Association;
Los Angeles, CA.

Berent, S., Greenfield, D.N., and Julius, S.N. (1994)  Presentation at the 1994 Convention of the
American Psychological Association (Practice Directorate Mini-Convention); Los Angeles, CA.

Greenfield, D.N. (1994) Hospital Practice for Psychologists.  Presentation at the Region 2 Meeting of
the Connecticut Psychological Association, Middlesex Memorial Hospital; Middletown, CT.

Greenfield, D.N., and Bart, L. (1994) Solution-Focused Approaches to Trauma and Other Therapeutic
Challenges.  Presentation sponsored by Brattleboro Retreat and Psychological Health Associates;
Farmington, CT.

Abrams, D.B., Blume, G., Buccilli, R., Carone, J.E., Greenfield, D.N., Holzman, A.D., Laundy, K., and
Singer, R.P. (1994)  Thriving in  the 90' s  –  Creative Strategies for Peak Performance.  Presentation at
the Connecticut Psychological Association Annual Convention; Waterbury, CT.

Greenfield, D.N., Lothstein, L.M., and Sutton, R. (1993)  The Clinical Examination: Determining
Mental Status.  Panel presentation at the Connecticut Psychological Association Annual Meeting on the
Psychologist Emergency Certification Law; Hartford, CT.

Greenfield, D.N. (1993)  Life after Managed Competition:  How to Survive and Prosper as a
 Psychologist in  the 90's .  Presentation at Connecticut Psychological Association, Region 5 Meeting,
Danbury Hospital; Danbury, CT.

Greenfield, D.N. (1993)  Short-Term and Solution-Focused Psychotherapy.  Presentation to the
Travelers, Utilization Review/Case Manager staff; Glastonbury, CT.

Greenfield, D.N., Lothstein, Leslie M., and Magnovita, J.J. (1993)  Perspectives  on Psychotherapy:
Solution-Focused Psychotherapy.  Presentation at the 1993 meeting of the Connecticut Psychological
Association; Stamford, CT.

Greenfield, D.N. (1993)  Managing Relationships.  Radio interview on WCCC-FM; Hartford, CT.

Greenfield, D.N. (1993)  Future Trends in Psychological Practice.  Presentation at the April meeting of the Connecticut Psychological Association, Region 1, Child and Family Services; Hartford, CT.

Greenfield, D.N. (1993)  Clinical Issues in Child Custody and Divorce.  Presentation at Child and Family Services; Hartford, CT.
Greenfield, D.N. and Olsen, L. (1993)   Solution-Focused Psychotherapy.  Presentation at Personal Performance Consultants EAP; Danbury, CT.

Greenfield, D.N. (1993)  Professional Psychology: Current Trends in the State of Connecticut.
Presentation at the Institute of Living, Clinical Psychology Department; Hartford, CT.

Greenfield, D.N. (1992)  Systems Theory and Marital Therapy: Clinical Applications.  Lecture at the Graduate School, Western Connecticut State University; Danbury, CT.

Greenfield, D.N. (1992)  "Dealing with Holiday Stress."  Radio interview on WPOP-AM; Hartford, C.

Greenfield, D.N. (1992)  Stress  Management.  Workshop at Energy Research Corporation;
Danbury, CT.

Brown, Anita, Newman, Russ, Greenfield, D.N., Hartman-Stein, Paula, McCann, Sean, and Musgrove, Barbara (1992)  Practice Diversification: New Opportunities to Expand Your Practice.  Presentation at the Practice Directorate mini-convention at the 1992 meeting of the American Psychological Association; Washington, D.C.

Greenfield, D.N. (1992)  Marketing and Practice Development: The Practice of Business and the Business of Practice.  Presentation at the 1992 meeting of the American Psychological Association; Washington, D.C.

Williams, B.J., Abrahamson, D.J., Doolittle, T.M., Greenfield, D.N., and Bak, J.B. (1992)  Strategies for Dealing with Managed Care.  Presented on: Managed Care or Damaged Care: Therapist, Patient, and Counter-transference Reactions to Managed Care.  Presented at the 1992 meeting of the American Psychological Association, Washington, D.C.

Greenfield, D.N. (1992)  Mental Status and Clinical Diagnosis.  Presentation at Wheeler Clinic;
Plainville, CT.

Greenfield, D.N. (1992)  Managing Change in a Changing World.  Presented to employees at Hughes Danbury Optical Systems, Inc.; Danbury, CT.

Greenfield, D.N. (1992)  Developing Successful Relationships. Presented to the Mental Health Association of Connecticut (Greater Hartford Manic-Depressive Support Group), University of Connecticut Health Center; Farmington, CT.

Greenfield, D.N. (1992)  Marketing and Practice Development.  Workshop at the University of Hartford, Clinical Psychology Colloquium; West Hartford, CT.

Greenfield, D.N. (1991)  Neuropsychological Considerations in Clinical Practice.  Workshop at the University of Hartford, Clinical Psychology Colloquium Series; West Hartford, CT

Cline, J.C., Greenfield, D.N., Lothstein, L.M. (1990)  Hospital Practice and Psychology: An Introduction to Independent Practice in Hospital Settings.  Presentation at the 1990 meeting of the Connecticut Psychological Association; Stamford, CT

Greenfield, D.N. (1990)  <u>Psychology, Hospital Practice and Prescription Privileges: A Necessary Union</u>.
Presentation at the 1990 meetings of the American Psychological Association; Boston, MA

Greenfield, D.N. (1990)  <u>Changes in the Healthcare Market: Clinical and Economic Considerations</u>.
Presentation at the 1990 meetings of the American Psychological Association; Boston, MA

Greenfield, D.N. (1989)  <u>Hospital Practice Privileges and Connecticut Psychology: Why It Is An
Important Place for Us To Practice Independently</u>.  Presentation at the 1989 meetings of the Connecticut
Psychological Association; Farmington, CT.

Austad, C., Greenfield, D.N., Chair, Kisch, J., Lee, R., Rockland-Miller, H., and Sperry, R. (1989)  <u>The
Effects of the Changing Mental Healthcare Market on Clinical Practice: Clinical and Economic
Considerations</u>.  Presentation at the 1989 meeting of the Connecticut Psychological Association;
Farmington, CT.

Greenfield, D.N. (1989)  <u>Hospital and Related Practice Issues for Psychologists</u>.  Presentation at the
1989 meeting of the American Psychological Association; New Orleans, LA

Greenfield, D.N., Korwin, M., Magin, A., Thomason, S. (1989)  <u>Borderline Personality Disorder</u>.
Presentation at New Mexico State University.

Greenfield, D.N. (1988)  <u>Hospital Practice: Privilege or Penalty</u>.  Presentation at the 1988 meetings of
the Connecticut Psychological Association; New Haven, CT.

Greenfield, D.N. (1988)  <u>Marital Satisfaction: An Empirical Analysis</u>.  Presentation at the 1988 meetings
of the Connecticut Psychological Association; New Haven, CT.

Greenfield, D.N., and Stoltenberg, C. (1985)  Psychology Specialty Training: Towards a Generic
Training Model of Professional Psychology, <u>ERIC Abstracts</u>.

Greenfield, D.N., Tucker, K., and smith, S. (1985) Group treatment of Anorexia Nervosa and Bulimia:
A Qualitative Analysis, <u>ERIC Abstracts</u>.

Greenfield, D.N., and Stoltenberg, C. (1985)  <u>Psychology Specialty Training: Towards a Generic
Training Model of Professional Psychology Training</u>.  Presentation at the 1985 meetings of the
Southwestern Psychological Association; Austin, TX

Greenfield, D.N., Tucker, K., and Smith, S., (1985)  <u>Group Treatment of Anorexia Nervosa and
Bulimia: A Qualitative Analysis</u>.  Presented at the 1985 meeting of the southwestern Psychological
Association; Austin, TX

Greenfield, D.N., and Marshall, P. (1984)  <u>Automaticity and the Acquisition of a Nonverbal Cue</u>.
Presentation at the 1984 meetings of the Southwestern Psychological Association; New Orleans, LA

Greenfield, D.N. (1978)  <u>The Effects of Room Color, Subject Gender and Size of Subject 's
Family of Origin on the Perception of Crowding</u>.  Presentation at the 1978 meetings of the North
Jersey Environmental Psychologists Association; Mahwah, N.J.

## TEACHING EXPERIENCE

| | |
|---|---|
| 8/00 - Present | <u>Assistant Clinical Professor</u><br>Department of Psychiatry<br>The University of Connecticut School of Medicine<br> Farmington, Connecticut<br> --currently teaching didactic and clinical courses on Internet addiction, human sexuality and dysfunction and attending doctor/clinical supervisor of PGY2 & PGY3 psychiatry residents. |
| 2000 – Present | <u>Adjunct Associate Professor</u><br>Department of Educational Psychology<br>The University of Connecticut. Storrs, Connecticut. |
| 1995 – 1997 | <u>Adjunct Clinical Professor</u><br>Antioch New England Graduate Center<br>Doctoral Psychology Program<br>Keene, NH. |
| 2000—Present | Adjunct Professor<br>University of Connecticut<br>Department of Educational Psychology<br>Counseling Psychology Program<br>Storrs, Connecticut. |
| Summer 1991-<br>Present | <u>Adjunct Clinical Faculty</u><br>Department of Clinical Psychology<br>University of Hartford<br>Hartford, CT. |
| 4/91 | <u>Colloquium Presentation</u><br>Department of Clinical Psychology<br>University of Hartford<br>Hartford, CT. |
| 10/89 | <u>Guest Lecturer in Psychopathology</u><br>Clinical psychology Doctoral Program<br>University of Hartford<br>Hartford, CT. |
| 9/87 – 6/88 | <u>Adjunct Professor of Psychology</u><br>Western Connecticut State University<br>Danbury, CT. |
| 10/86 – 9/87 | <u>Assistant Clinical Professor</u><br>Virginia Commonwealth University<br>Department of Psychology<br>Richmond, VA. |

| 9/81 – 5/82 | Instructor of Psychology |
| | Texas Tech University |
| | Department of Psychology |
| | Lubbock, TX. |
| | |
| 1/80 – 5/80 | Adjunct Instructor of Psychology |
| | Ramapo College of New Jersey |
| | Mahwah, NJ. |

## JOURNAL & BOOK REVIEWER/EDITOR:

Journal of Academic Psychiatry

Editor for special issue of Addicta: Turkish Journal on Addictions

CyberPsychology Behavior and Social Networking

Oxford University Press

Wiley Blackwell

Journal of Behavioral Health

## PROFESSIONAL EXPERIENCE

| 9/05 --Present | **Clinical Director, The Healing Center, LLC** |

The Healing Center, LLC offers a unique range of traditional and leading-edge psychological and psychiatric healing and therapeutic services. We specialize in the treatment of relationship and addictions issues, as well as technology addiction issues.

| 8/99 – Present | **Founder and CEO, The Center for Internet and Technology Addiction (CITA and The Institute of Internet and Technology Addiction, LLC)** |

CITA is a clinical treatment, research, consultation, training, and educational organization focusing on the psychiatric, neurobiological, and behavioral aspects of Internet and Digital Media behavior. We provide treatment for a variety of Internet addiction and digital media abuse issues, including video/computer gaming and online sexual behavior. We provide legal expert witness and case consultation assistance in legal matters relating to the use and abuse of Internet and digital media technology.

Dr. David N. Greenfield                        Exhibit R                                    14

| | |
|---|---|
| 10/86 – 9/2005 | **Principal & Founder, Psychological Health Associates, LLC** |
| | West Hartford and Danbury, CT |
| | Private, multidisciplinary, multi-location behavioral health practice, with services in individual and family psychotherapy, pharmacotherapy, hypnosis, intensive and structured group treatment programs, including: psychological, substance abuse, and child custody evaluations. Therapy programs for eating disorders, anxiety and panic disorders, parenting skills; Employee Assistance Programs. |
| 1/98 –1/2001 | **Past-President** <br> Connecticut Psychological Association <br> Hartford, CT |
| 5/93 – Present | **Consultant** <br> Department of Public Health and Addiction Services <br> Hartford, CT |
| | Provide psychological evaluation, consultation and testimony regarding health care providers in Connecticut. |
| 3/94 – 9/97 | **Consulting Psychologist** <br> Newtown Youth Services |
| | Provide case consultation, supervision, and staff training to Youth Service & family counseling agency. |
| 1/93 – 12/95 | **Chairperson, Hospital Practice Committee, Bill Captain, Co-Chair Hospital Practice Implementation Task Force** <br> Connecticut Psychological Association <br> East Hartford, CT |
| | Coordinate legislative activities related to clinical practice in hospitals and other health care facilities for Connecticut Psychologists. Drafted Bill text, provided testimony, lobbying, and research toward passage of hospital practice bill in 1995. |
| 1/93 – Present | **Consultant** <br> Practice Development Consultants <br> West Hartford, CT |
| | Provide practice development and marketing consultation to mental health practitioners and organizations; develop individualized business plans, practice design and organizational structuring. |
| 9/95  - Present | **Special Master** <br> Connecticut Superior Court, Family Division, Regional Family Trial Docket |
| | Provide mediation in an attorney-psychologist team for protracted domestic disputes. |

Dr. David N. Greenfield                          Exhibit R                                    15

| | |
|---|---|
| 1/94 – Present | **Contractor**<br>Connecticut Superior Court, Family Division<br><br>Developed along with partners, a Parenting Education Program for Parents going through divorces, also developed and implemented pilot psycho-educational program for children exposed to domestic violence. |
| 1/93 – 6/94<br>6/94 – 10/94 | **JCAHO Representative**<br>**Alternate Representative**<br>American Psychological Association<br>Washington, DC<br><br>Represent the APA and professional psychology to the Mental Health Care Professional and Technical Advisory Committee of the Joint Commission on Accreditation of Health Care Organizations. |
| 12/88 – 2000 | **Consulting & Supervisory Psychologist**<br>Danbury Youth Services<br>Danbury, CT<br><br>Supervise clinical staff weekly; conduct in-service training; consult with program director, provide clinical teaching and case consultation. |
| 1/90 – 1/93 | **Practice Directorate Coordinator**<br>Connecticut Psychological Association<br>Council of Directors<br>East Hartford, CT<br><br>Coordinate professional and clinical practice committees for the Connecticut Psychological Association, including Hospital Practice, and Insurance and Managed Care Committee, and Referral Service. |
| 1/90 – 12/95 | **Legislative Committee Member / Key Psychologist**<br>Connecticut Psychological Association<br>East Hartford, CT<br><br>Prepare and present testimony regarding Emergency Certification, Competency Evaluation, and Hospital practice and other legislative issues relating to professional psychology.  Provided draft text and testimony for commitment bill. |
| 4/89 – 5/91 | **Chairperson, Program Committee**<br>Connecticut Psychological Association<br>East Hartford, CT<br><br>Coordinate annual convention and other program activities. |
| 1/89 – 9/89 | **Consulting Psychologist**<br>Midstate Psychotherapy Associates<br>Portland, CT<br><br>Provided psychodiagnostic evaluations for inpatient consultation; interpreted psychological tests; supervised clinical psychology interns in psychological testing. |

| | |
|---|---|
| 1/89 – 9/89 | **<u>Clinical Psychologist / Primary Clinician</u>**<br>Elmcrest Psychiatric Institute<br>Portland, CT<br><br>Coordinated clinical treatment for adolescents in an inpatient psychiatric hospital. Duties included: Diagnostic intakes, treatment and discharge planning, individual, group, and family psychotherapy; case management; supervised clinical psychology interns. |
| 10/87 – 1/89 | **<u>Clinical Psychologist</u>**<br>Acute Psychiatry and Geriatric Units<br>Fairfield Hills Hospital<br>Newtown, CT<br><br>Provided neuropsychological assessment; individual, group, and family psychotherapy; psychological testing; case management. Coordinated a computer-assisted testing program. Provided clinical teaching and supervision of psychology interns in APA approved program. Conducted seminars on professional issues, mental status exam, and clinical hypnosis. |
| 3/87 – 10/87 | **<u>Post-Doctoral Fellow/Resident in Clinical Psychology</u>**<br><br>Fairfield Hills Hospital<br>Newtown, CT<br><br>Provided direct psychological services to inpatient psychiatric adults. Performed Psychological and Neuropsychological evaluation; provided individual, group, and family psychotherapy. Provided case consultation and treatment planning. Supervised clinical psychology interns. Received training and supervision in clinical neuropsychology |
| 10/86 – 3/87 | **<u>Psychologist / Program Coordinator</u>**<br>Center for Psychological Services and Development (APA Approved)<br>Virginia Commonwealth University<br>Richmond, VA<br><br>Performed child and family psychotherapy; provided direct clinical services through Employee Assistance Contract; performed psychological evaluations; supervised doctoral students in APA approved clinical/counseling doctoral programs; coordinated EAP and consultative programs. |
| 9/85 – 9/86 | **<u>Clinical Psychology Intern</u>**<br>McGuire V.A. Medical Center (APA Approved)<br>Richmond, VA<br><br>Rotations on: Inpatient psychiatry, mental health clinic, neurology, and drug/alcohol treatment unit. Performed individual, group, and child/family psychotherapy; conducted psychological evaluations, mental status exams and neuropsychological examinations. |

Attended training/supervision in hypnosis, psychotherapy, behavioral medicine, pharmacology and neuropsychology. Functioned on an inpatient unit as a team psychologist, which included case management and discharge duties.

3/85 – 8/85     **Assistant Psychologist**
Lubbock Regional Mental Health / Mental Retardation Center
Lubbock, TX

Program focused on adolescent MR population.  Psychological evaluations, staffings, developed treatment plans, designed and administered behavioral programs, provided individual and group counseling, conducted seminars on social skills and sexual behavior, performed community liaison and outreach.

9/84 – 5/85     **Psychology Clinic Co-Director**
Texas Tech University Psychology Clinic
Lubbock, TX

Administrative assistance of mental health teaching clinic.  Duties included: Program development, policy and procedures, crisis intervention, and staffing. Clinical services in child, family, and adult group psychotherapy; psychological and forensic evaluations.  Supervised doctoral practicum students.

7/82 – 12/82     **Therapist and Supervisor of  Hotline Paraprofessionals**
Texas Tech University Counseling Center
Lubbock, TX

Provided individual psychotherapy, interpreted psychological tests, attended seminars and workshops.  Supervised 15 hotline workers, designed and implemented training program; public relations.

9/78 – 1/79     **Masters Internship**
New York University Counseling Service
New York, NY

Provided individual counseling and psychotherapy; administered and interpreted psychological tests.

9/75 – 8/77     **Director and Training Coordinator**
Ramapo College Hotline and Drop-in Center
Mahwah, NJ

Administered a peer counseling and crisis intervention center for a college community.  Provided training and supervision of 17 peer counselors; extensive community outreach and budget design.

Dr. David N. Greenfield                    Exhibit R                                    18

## HOSPITAL STAFF AFFILIATION

| | |
|---|---|
| 2000 -- Present | John Dempsey Hospital<br>University of Connecticut Health Center |
| 10/94 – 2016 | Hartford Hospital, Hartford, CT<br>Medical Staff– Dept. of Psychiatry |
| 6/94 – Present | Mt. Sinai / St. Francis Hospitals; Hartford, CT<br>The Center for Behavioral Health<br>Associate professional staff , Adjunct medical staff – Mt. Sinai Hospital |
| 1/92 – 10/94 | Institute of Living; Hartford, CT<br>Courtesy psychology staff |
| 7/90 – 7/92<br>9/94 – closing | Elmcrest Psychiatric Institute; Portland, CT<br>Medical staff, courtesy privileges |

## PROFESSIONAL AFFILIATIONS/MEMBERSHIPS

- Member, Sexual Medicine Society of North America
- Member, International Society for Sexual Medicine
- Member, American Society of Addiction Medicine
- Member,  American Society for the Advancement of Pharmacotherapy
- Member, American Psychological Association
- Fellow, Past-President: Connecticut Psychological Association; Member Forensics Division
- Assistant Clinical Professor of Psychiatry, University of Connecticut School of Medicine
- National Register for Health Service Providers in Psychology
- Clinical Member, CATSO - Connecticut Association for the Treatment of Sexual Offenders

## AWARDS / HONORS

1999 Recipient of the American Psychological Association's "*Heiser Presidential Award for Professional Psychology Advocacy*".

1995 Recipient of the "*Distinguished Contribution to Psychology in Connecticut*," presented by the Connecticut Psychological Association.

2006, Psychiatry Residents Teaching Award, Psychiatry Resident Program, University of Connecticut, School of Medicine.

Graduation Honors, Ramapo College of New Jersey.

References available upon request.

08/16: DNG

Exhibit R

Exhibit 2

Exhibit R

DELIVER TO:       LOVE LAW FIRM
ATTENTION:        GAIL LOVE
                  107 EAST MAIN STREET


                  HENDERSON, TX 75652

REGARDING:        ACCIDENT RECORDS
                  TEXAS DEPARTMENT OF PUBLIC SAFETY
YOUR FILE NO:
OUR FILE NO:      463493

                  **VOLUME: 1 OF 1**

LOCATION INFO:    TEXAS DEPARTMENT OF PUBLIC SAFETY
                  ATTN:  RECORDS DEPT.
                  5805 N. LAMAR BLVD.
                  44098
                  AUSTIN, TX 78752
PHONE:            5124242007
FAX:              5124242948

CASE INFO:        6:15-CV-715-MHS
                  KIMBERLY MEADOR, INDIVIDUALLY, AND AS GUARDIAN FOR L.M., A
                  MINOR; AMOS STANDARD, INDIVIDUALLY, AND ON BEHALF OF THE
                  ESTATE OF SHARI STANDARD, DECEASED; ET AL
                  VS
                  APPLE, INC.

ATTORNEY:         GREGORY LOVE

FILING LOCATION:  TYLER

TAXABLE COSTS:    $413.50

ORDER DATE:       03/07/2016
INVOICE DATE:     03/23/2016

DATES FROM:
THROUGH:

RECORD TYPE(S):   Accident Records

Exhibit R

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

KIMBERLY MEADOR, INDIVIDUALLY, )
AND AS GUARDIAN FOR L.M., A MINOR; )
AMOS STANDARD, INDIVIDUALLY, AND )
ON BEHALF OF THE ESTATE OF SHARI )
STANDARD, DECEASED; AND RUSSELL )
JONES, INDIVIDUALLY, AND ON BEHALF )
OF THE ESTATE OF SANDRA JONES, )
DECEASED; )
                                             )      No. 6:15-cv-715-MHS
                                             )
        Plaintiffs, )
    v. )
                                             )
APPLE, INC.; )
                                           )
        Defendant. )
                                           )

## PLAINTIFFS' NOTICE OF DEPOSITION BY WRITTEN QUESTIONS

TO:   **Texas Department of Public Safety, Custodian of Records**, 5805 N. Lamar Blvd.,
      Austin, Texas 78752-4431

1.     Please take notice that, under Federal Rule of Civil Procedure 31, plaintiffs' Kimberly

Meador, Individually, and as guardian for L.M. a minor, *et al.*, will take the deposition of the

Custodian of Records for the Texas Department of Public Safety by written questions on April

15, 2016, at 1:00 p.m. or on a date, time, and place to be determined by the deposition officer at

5805 North Lamar Blvd., Austin, Texas 78752-4431.

2.     The deposition will be taken by DepoTexas, 100 E. Ferguson, Suite 900, Tyler, Texas

75702; 903/593-3213, or another reporter at its direction.

3.     A copy of the questions to be asked at the deposition is attached.

4.     Under Federal Rules of Civil Procedure 31(a)(1) and 45(a)(1)(A)(iii), Texas Department

of Public Safety is required to produce the following discoverable information at the deposition:

Exhibit R

*All data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 132S3771.1/2013156046. See crash report attached as Exhibit 1.*

Dated: March 4, 2016

Respectfully submitted,

Gregory P. Love
Texas Bar No. 24013060
**LOVE LAW FIRM, P.C.**
P. O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444
Facsimile: (903) 392-2267
greg@lovetrialfirm.com

Ron Adkison
State Bar No. 00921090
**Adkison Law Firm**
300 West Main Street
Henderson, TX 75652
Telephone: (903) 657-8454
Facsimile: (903) 657-6108

John F. (Jack) Walker, III
**Martin Walker, PC**
121 N. Spring Ave.
Tyler, Texas 75702
Telephone: (903) 521-1600
Facsimile: (903) 595-0796
jwalker@martinwalkerlaw.com

*ATTORNEYS FOR PLAINTIFFS*

2

Exhibit R

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2016, counsel of record for the defendant are being

served a copy of the foregoing document via E-mail:

Eric H. Findlay, Esq.
Brian Craft, Esq.,
Debby Gunter, Esq.
Findlay Craft, P.C.
102 N. College Ave., Suite 900
Tyler, Texas 75702
efindlay@findlaycraft.com
bcraft@findlaycraft.com
dgunter@findlaycraft.com

Gregory P. Love

3

Exhibit R

, RECEIVED.

MAR 8 - 2016
@ 4:35 pm

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | | |
|---|---|---|
| Kimberly Meador, et al | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   6:15-cv-00715-MHS |
| Apple, Inc. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:   , Texas Department of Public Safety, Custodian of Records, 5805 N. Lamar Blvd., Austin, Texas 78752-4431

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See attached Notice of Deposition on Written Questions.

| Place:   5805 N. Lamar Blvd., Austin, Texas 78752-4431 | Date and Time:   04/15/2016 1:00 pm |
|---|---|

The deposition will be recorded by this method:   Written Questions

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
All data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13263771.1/2013156046.

The following provisions of Fed. R. Civ. P. 45 are attached -- Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   03/04/2016

CLERK OF COURT

OR

_____      _____
Signature of Clerk or Deputy Clerk            Attorney's signature

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Kimberly Meador, Amos Standard and Russell Jones
, who issues or requests this subpoena, are:
Gregory P. Love, Love Law Firm, P. O. Box 948, Henderson, Texas 75653; greg@lovetrialfirm.com; 903/212-4444

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

DELIVERED:
ON: 3/09/16
BY: _____ SCH 73S
@:_____ am pm

Exhibit R

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

KIMBERLY MEADOR, INDIVIDUALLY,        )
AND AS GUARDIAN FOR L.M., A MINOR;    )
AMOS STANDARD, INDIVIDUALLY, AND      )
ON BEHALF OF THE ESTATE OF SHARI      )
STANDARD, DECEASED; AND RUSSELL       )
JONES, INDIVIDUALLY, AND ON BEHALF    )
OF THE ESTATE OF SANDRA JONES,        )        No. 6:15-cv-715-MHS
DECEASED;                             )
                                      )
            Plaintiffs,               )
      v.                              )
                                      )
APPLE, INC.;                          )
                                      )
            Defendant.                )
                                      )

## DEPOSITION BY WRITTEN QUESTIONS

### A. DEFINITIONS

The following terms have the following meanings, unless the context requires otherwise:

1.   Person.  The term "person" means any natural person, a business, a legal or governmental entity, or an association.

2.   You & your.  The terms "you" and "your" mean the Texas Department of Public Safety and its agents, representatives, attorneys, experts, and other persons acting or purporting to act on its behalf.

3.   Material.  The term "material" means all documents, electronically stored information, or tangible things. The term is synonymous with and equal in scope to the terms "documents," "electronically stored information," and "tangible things" in Federal Rule of Civil Procedure 34(a)(1). A draft or nonidentical copy of a document, electronically stored information, or a tangible thing is a separate item within the meaning of this term.

a.   Document.  The term "document" means information that is fixed in a tangible medium, such as paper. It includes, but is not limited to, writings, drawings, films, charts, photographs, notices, memoranda, diaries, minutes, correspondence,

4

books, journals, ledgers, reports, worksheets, notes, printed e-mails, letters, abstracts, audits, charts, checks, diagrams, drafts, instructions, lists, logs, resumes, summaries.

b.     Electronically stored information. The term "electronically stored information" means electronic information that is stored in a medium from which it can be retrieved and examined. It includes, but is not limited to, all electronic files that are electronically stored.

(1)     "Electronic file" includes, but is not limited to, the following: voicemail messages and files; e-mail messages and files; text messages and files; deleted files; temporary files; system-history files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; computer-activity logs; metadata.

(2)     "Electronic information system" refers to a computer system or network that contains electronic files and electronic storage.

(3)     "Electronic storage" refers to electronic files contained on magnetic, optical, or other storage media, such as hard drives, flash drives, DVDs, CDs, tapes, cartridges, floppy diskettes, smart cards, integrated-circuit cards (e.g., SIM cards).

c.     Tangible thing. The term "tangible thing" means a physical object that is not a document or electronically stored information.

4.     Communication. The term "communication" means the transmittal of information in the form of facts, ideas, inquiries, or otherwise.

5.     Relating. The term "relating" means concerning, referring, describing, evidencing, or constituting, either directly or indirectly.

6.     Any. The term "any" should be understood in either its most or its least inclusive sense as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

7.     And & or. The connectives "and" and "or" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

8.     Number. The use of the singular form of any word includes the plural and vice versa.

5

## B. INSTRUCTIONS

1.    Produce documents and tangible things in the forms as they are kept in the ordinary course of business, or organize and number or label them to correspond with the categories in the discovery request.

2.    Produce electronically stored information in native format or single-page searchable Adobe Tagged Image File Format (TIFF). For any electronically stored information produced: write all of the electronically stored information to reasonably usable storage media, e.g., CD, DVD, or flash drive.

3.    For any materials that you claim no longer exist or cannot be located, provide all of the following:

a.    A statement identifying the material.

b.    A statement of how and when the material ceased to exist or when it could no longer be located.

c.    The reasons for the material's nonexistence or loss.

d.    The identity, address, and job title of each person having knowledge about the nonexistence or loss of the material.

e.    The identity of any other materials evidencing the nonexistence or loss of the material or any facts about the nonexistence or loss.

6

Exhibit R

<u>Exhibit A</u>

<u>**WRITTEN QUESTIONS**</u>

1.   Please state your full name, occupation and official title.

ANSWER: Trooper III Dustin Nichols, Highway patrol

2.   Are you the Custodian of Records for the Texas Department of Public Safety?

ANSWER: Yes

3.   As part of your duties as Custodian of Records for the Texas Department of Public Safety, are you the custodian of *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046?*

ANSWER: Yes

4.   Have you been served with a subpoena for the production of *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046?*

ANSWER: No

5.   Do you understand that the subpoena requests all records in your possession, custody or control relating to *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046?*

ANSWER: Yes

6.   Were *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046* made by law enforcement officers or other employees of Texas Department of Public Safety?

ANSWER: Yes

7

7.      Were *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046* made at or near the time of the act, event or matter identified in the records?

ANSWER:   Yes

8.      Were *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046* made in the regular course of the business of the Texas Department of Public Safety?

ANSWER:   Yes

9.      Were *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046* transmitted to your files, and did you maintain the records as part of your official duties as the custodian of records for the Texas Department of Public Safety?

ANSWER:   Yes

10.     Please hand the originals or exact duplicates of the *all data, reports, notes, drawings, photographs, videography, and audio recordings generated in relation to the motor vehicle crash identification number 13253771.1/2013156046* to the court reporter taking your deposition for photocopying and attachment to this deposition. Have you now given all records requested to the court reporter taking your deposition? If not, identify for the court reporter the records and documents you did not produce and explain why you did not produce them.

ANSWER:   Yes

11.     How long does the Texas Department of Public Safety maintain its files, and does the Texas Department of Public Safety ever destroy its files?

ANSWER:
            Depends on type of file.

8

Exhibit R

12.     Are you aware of any other entities or persons that may have possession of records relating to the subject matter of this lawsuit? If so, please state the name and address of such entity or person.

ANSWER:  Yes

13.     Have you been requested or directed by any person to withhold or protect, for any reason, the records identified in plaintiffs' subpoena? Has any person suggested that you should withhold or protect the records identified in plaintiffs' subpoena? If so, please identify the person who conveyed this information to you and when that event occurred.

ANSWER:  No

14.     Do you know or have reasons to believe that the records identified in plaintiffs' subpoena have in any manner been edited, purged, culled, deleted, or otherwise altered? If so, please identify the records and why they were altered or removed.

ANSWER:  No

15.     Will copies of the records identified in these questions be attached to your responses?

ANSWER:  Yes

Dated: March 4, 2016.

Respectfully submitted,

Gregory P. Love
Texas Bar No. 24013060
LOVE LAW FIRM, P.C.
P. O. Box 948
Henderson, Texas 75653
Telephone: (903) 212-4444
Facsimile: (903) 392-2267
greg@lovetrialfirm.com

Ron Adkison
State Bar No. 00921090
Adkison Law Firm

9

300 West Main Street
Henderson, TX 75652
Telephone: (903) 657-8454
Facsimile: (903) 657-6108

John F. (Jack) Walker, III
Martin Walker, PC
121 N. Spring Ave,
Tyler, Texas 75702
Telephone: (903) 521-1600
Facsimile: (903) 595-0796
jwalker@martinwalkerlaw.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2016, counsel of record for the defendant are being

served a copy of the foregoing document via E-mail:

Eric H. Findlay, Esq.
Brian Craft, Esq.,
Debby Gunter, Esq.
Findlay Craft, P.C.
102 N. College Ave., Suite 900
Tyler, Texas 75702
efindlay@findlaycraft.com
bcraft@findlaycraft.com
dgunter@findlaycraft.com



Destin S. Nichols

Gregory P. Love

Dianne S. Taylor        3/22/16

10

DIANNE S. TAYLOR
Notary Public
STATE OF TEXAS
My Comm. Exp. 07-21-2019

# america★first

325 N. St. Paul Street
Suite 1900
Dallas, TX 75201
800-497-7618
800-311-8300 (fax)

CLERK OF THE EASTERN DISTRICT COURT - TYLER
106 FEDERAL BLDG. & U.S.
211 W. FERGUSON ST.
TYLER TX, 75702

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| KIMBERLY MEADOR, INDIVIDUALLY, § | |
| AND AS GUARDIAN FOR L.M., A MINOR; § | |
| AMOS STANDARD, INDIVIDUALLY, AND § | |
| ON BEHALF OF THE ESTATE OF SHARI § | |
| STANDARD, DECEASED; ET AL § | CIVIL ACTION NO. 6:15-CV-715-MHS |
| VS § | |
| APPLE, INC. § | |

---

**Regarding Deposition by Written Questions**
Directed to the Custodian of Records for: **TEXAS DEPARTMENT OF PUBLIC SAFETY**
Pertaining to **ACCIDENT RECORDS**

The witness was duly sworn and the transcript attached is a true record of the testimony given by the witness. The deposition was signed by the witness and returned on 03/23/2016. Changes made by the witness, if any, in the transcript are attached or incorporated hereto. The original deposition transcript, together with copies of all exhibits, were provided to the attorney or party who asked the first question appearing in the transcript for safekeeping and use at trial. The charges for the preparation of the completed deposition transcript and any copies of the exhibits are to be paid for by the attorney for the Plaintiff and total $413.50.

**Attorneys of Record follow:**

GREGORY P. LOVE          RON ADKISON          JOHN (JACK) F. WALKER, III          ERIC H. FINDLAY, ESQ

I certify that a true and correct copy of the foregoing instrument was mailed to the respective parties or attorneys of record, postage prepaid, was hand delivered, or transmitted by facsimile.

_Allyson King_
AFFIANT

SWORN TO AND SUBSCRIBED BEFORE ME ON 03/24/2016

_Cheri C. Bibb_
Notary Public in and for
The State of Texas

CHERI BIBB
Notary Public
STATE OF TEXAS
My Comm. Exp. Nov. 12, 2016

73129-1-463493

# america★first

325 N. St. Paul Street
Suite 1900
Dallas, TX 75201
800.497.7618
800.311.8300 (fax)

# Status Report

## To

| Name | Company/Firm | Phone | Ext. | Fax |
|---|---|---|---|---|
| GAIL LOVE | LOVE LAW FIRM | 9032124444 | | 9033922267 |

## From

| Name | Extension | Email |
|---|---|---|
| STACIE SARTORS | | ssartors@america-first.com |

| Reference/Our File No | Date | Pages (Including Cover Sheet) |
|---|---|---|
| FIORENTINO / 463493 | 3/23/16 | 1 |

## Order Information

KIMBERLY MEADOR, INDIVIDUALLY, AND AS      VS      APPLE, INC.
GUARDIAN FOR L.M., A MINOR; AMOS
STANDARD, INDIVIDUALLY, AND ON BEHALF OF
THE ESTATE OF SHARI STANDARD, DECEASED;
ET AL

**Subject**                    Client File Number                    Claim Number

ACCIDENT RECORDS

**Facility**

TEXAS DEPARTMENT OF PUBLIC SAFETY

## Message

Please be advised, this custodian has provided us with the best available copies of the records.

Please call us immediately if the fax you receive is incomplete or illegible.
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone toll free at 1 800.497.7618 and return the original message to us at the above address via the US Postal Service. Thank You. America First Legal Services, Inc.

Exhibit R

# STATE OF TEXAS VS. ASHLEY MARCELLA KUBIAK

## Cause # CR13-178 & CR13-179

## Rusk County

## Table of Contents

1. Case Report
2. Fatal Packets (2)
3. Hand notes on Fatal Packet
4. All driver and vehicle returns, HQ-109, and Consent to Search Form, for 2 vehicles
5. DWLI request and Packet for KUBIAK
6. Cell phone records volunteered by KUBIAK
7. Court Orders and returns for Cell Phone Records
8. Crash Data from Airbag Control Modules (ACM) from 2 vehicles
9. Subpoenas issued for Trooper Nichols

Exhibit R

**Texas Department of Public Safety**

'6# TX1331OFOZOO2

. 2013  2 35 pm

T.    J66646

lator: KUBIAK ASHLEY MARCELLA                    Phone
Addr: 13261 HILL CREEK RD
   WHITEHOUSE, TX 75791-0000
/Sex WF    Height  508   DOB  07/22/1991
LP TX - BT14022   Make DODG           Model  PK
Passengers ☐     Year  2003        Color  WHITE
azMat Plac ☐     Type PICKUP TRUCK
Constr. Zone ☐     Route 0043        County  RUSK
ers Present ☐ MilePost  322        Weather CLEAR/CLOUDY
ation.                                Traffic  LIGHT
0043 IN RUSK CO. (306-324)
ged:      Speed Limit     Accident  ☑ Radar Cal
er Cond FATAL

OLATIONS
DRIVING WHILE LICENSE INVALID - DL (MA)

u are hereby notified to appear before:
dge DISTRICT COURT IN RUSK CO
ourt DISTRICT        Pct & Place    Phone

or before  Mon May 06, 2013 10:00:00AM

ed by 12338 - D NICHOLS
egion 1 District B    Area 10
ereby promise to appear at the time and place designated in this notice:

3NATURE

---

**IMPORTANT MESSAGE**

*nn.   / traffic law violations are recorded as a factor in about 85% of
le rural traffic accidents in Texas. Approximately 60% of the traffic
eaths in Texas occur on rural highways. The enforcement actions taken
gainst you and any subsequent court actions are intended to secure
ompliance with the traffic laws by you and all other users of the
ighways. Failure to comply with your written promise to appear in c t*

---

**Texas Department of Public Safety**



THP6# TX1331OFOZOO1
(150)
Date. April 30, 2013  2:35 pm
DL# TX - 25366646

Violator: KUBIAK  ASHLEY MARCELLA                 Phone
Res Addr: 13261 HILL CREEK RD
   WHITEHOUSE, TX 75791-0000
Race/Sex WF    Height  508   DOB  07/22/1991
Veh LP TX - BT14022   Make DODG         Model  PK
Passengers ☐     Year  2003        Color  WHITE
HazMat Plac ☐     Type PICKUP TRUCK
Constr. Zone ☐     Route 0043        County  RUSK
Workers Present ☐ MilePost  322      Weather CLEAR/CLOUDY
Location                              Traffic  LIGHT
SH-0043 IN RUSK CO  (306-324)
Alleged:      Speed Limit     Accident  ☑ Radar Cal
Other Cond: FATAL

VIOLATIONS
1  CRIMINALLY NEGLIGENT HOMICIDE-FELONY
2  CRIMINALLY NEGLIGENT HOMICIDE-FELONY

You are hereby notified to appear before:
Judge DISTRICT COURT IN RUSK CO
Court: DISTRICT       Pct & Place    Phone

On or before  Mon May 06, 2013  10:00:00AM

Issued by 12338 - D NICHOLS
   Region 1  District B     Area 10
I hereby promise to appear at the time and place designated in this notice:

SIGNATURE

---

**IMPORTANT MESSAGE**

*Annually traffic law violations are recorded as a factor in about 85% of
the rural traffic accidents in Texas. Approximately 60% of the traffic
deaths in Texas occur on rural highways. The enforcement actions taken
against you and any subsequent court actions are intended to secure
compliance with the traffic laws by you and all other users of the*

THP-1 (8/04)

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

| | |
|---|---|
| X | TRAFFIC |
| X | CRIMINAL |
| | SCHOOL NOTIFICATION |

REQUIRED (ART. 15.27 CCP)

REPORT DATE:   05/15/13

FILE TITLE
1. Kubiak, Ashley Marcella
2. 13261 Hill Creek Road,
   Whitehouse, TX 75791
3. 1305 Lark Street Apt # 24
   Tatum, TX 75691
4. W/F, 5'08", 120 lbs
5.

| | | | |
|---|---|---|---|
| SID # | None | DL # | TX 2366646 |
| ID # | None | DOB # | 07/22/1991 |
| SSN # | N/A | | |

INVESTIGATING OFFICER:   Trooper II
TYPED NAME:   Dustin Nichols      ID-NR:   **12338**

SIGNATURE:   6/13/13

REGION/DISTRICT/SGT. AREA:   1B10
APPROVING SUPERVISOR:   Sergeant
TYPED NAME:   George Greenway      ID-NR:   **11706**

SIGNATURE:

RPT-RE:   Criminally Negligent Homicide, State Jail Felony, PC 19.05
Criminally Negligent Homicide, State Jail Felony, PC 19.05
Driving While License Invalid, Class B Misdemeanor, TRC 521.457

COMPLETE IF TRAFFIC OFFENSE AND CHEMICAL TEST IS OFFERED.
TEST OFFERED   BREATH ___ BLOOD ___ URINE ___ NONE ___   TEST GIVEN   BREATH ___ BLOOD ___ URINE ___ REFUSED ___ NONE ___

TEST RESULT 1) _____ 2) _____   DIS-23 SUBMITTED   YES ___   NO ___   OPERATOR/ID _____

| DEFENDANT(S) | OFFENSE(S) | COUNTY | DATE/TIME |
|---|---|---|---|
| Kubiak, Ashley Marcella | Criminally Negligent Homicide State Jail Felony PC 19.05 | Rusk SH 43 MP 324 | 04/30/13 04:35 PM |
| | Criminally Negligent Homicide State Jail Felony PC 19.05 | | |
| | Driving While License Invalid Class B Misdemeanor TRC 521.457 | | |

**Synopsis:**

On 04/30/13, Kubiak, Ashley M. was the driver in a crash that killed 2 people and injured 3 others. Further investigation revealed that she was reading a text on her phone just prior to the crash. I am requesting that warrants be issued for her arrest for 2 (two) counts of Criminally Negligent Homicide and for Driving While License Invalid.

000003

THP-1 Continuation (8/04)

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

| | |
|---|---|
| FILE TITLE:  Kubiak, Ashley Marcella | COUNTY:  RUSK |
| IVESTIGATING OFFICER:   Trooper II Dustin Nichols | REPORT DATE:   05/15/13 |

## Details:

1. This offense occurred on April 30th, 2013, at approximately 4:35 PM on SH 43 near MP 324 in Rusk County, Texas.

2. Specifically: I, Trooper II Dustin Nichols, was contacted by Rusk County Communications to investigate a crash on SH 43 near the intersection CR 214-D.

3. As I arrived on scene I observed a little boy motionless in the ditch next to a badly damaged black SUV. I also saw several emergency vehicles, 2 (two) more crashed vehicles and several injured people in the ditch.

4. Trooper Ricardo Fabbiani was off duty but on scene checking on wounded and administering first aid.

5. All vehicles and occupants are as follows:

| **Unit 1 white Dodge  PU** | **Unit 2 black Chevrolet SUV** | **Unit 3 white Ford PU** |
|---|---|---|
| TX Registration BT1 4022 | TX Registration 32FWH9 | TX Registration BMB 1338 |
| Driver of Unit 1 | Driver of Unit 2 | Driver of Unit 3 |
| Ashley M. Kubiak | Sandra Mims Jones | John Kim Wood |
| TX DL # 2536646 | TX DL # 04113211 | TX DL # 06442307 |
| Age 21 | Age 63 | Age 58 |
| | Front Seat Passenger | Front Seat Passenger |
| | Shari Mims Standard | Joni Gail Wood |
| | Age 62 | Age 54 |
| | Second seat left side | |
| | Passenger | |
| | Sammy Lane Meador | |
| | Age 6 | |

6. The crash investigation revealed that Units 1 and 2 were traveling NE on SH 43. Unit 2 was slowing to make a left turn onto CR 214-D. Driver of Unit 1 was distracted inside the vehicle and she later stated that when looked up, she tried to avoid a crash by turning the wheel to the right but couldn't avoid colliding with Unit 2 in the back right with her front left. This caused Unit 2 to go into the oncoming lane in front of Unit 3, which struck Unit 2 in the right side with it front. Unit 2 rolled over to the left where it came to rest on its tires in the ditch. Units 1 and 3 came to rest in the roadway.

7. The driver of Unit 1 was transported to Trinity Mother Francis in Tyler for medical treatment.

8. The driver of Unit 2, Sandra Jones, and the front seat passenger, Shari Mims, died on scene, as a result of the crash, and were pinned in the SUV. They were pronounced dead by Justice of the Peace Joe Sorrells, Precinct 5 Rusk County

THP-1 Continuation (8/04)

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

| | |
|---|---|
| FILE TITLE:  Kubiak, Ashley Marcella | COUNTY:  RUSK |
| IVESTIGATING OFFICER:   Trooper II Dustin Nichols | REPORT DATE:   05/15/13 |

9. The 6 year old boy, Sammy Lane Meador was transported to Henderson ETMC immediately for medical treatment. He was shortly Life Flighted to Children's Hospital in Dallas where he was placed on life support.

10. A check on Kubiak's driving record revealed that her license was currently suspended. The license was suspended on April 14th, 2013 for being a habitual violator. Her record had 4 speeding convictions on 01/10/2013, 07/24/2012, 08/13/2012, and 02/23/2012. Also she had completed a Driver Safety Course on 08/23/2010. She had been involved in crashes on 07/06/2009, 04/26/2009, and 10/11/2008.

11. On May 6th, 2013, Kubiak met with me at the DPS Office in Henderson were she was Mirandized and questioned about the crash and events leading up to the crash.

12. During the interview Kubiak informed me that she had left from work and that she had been texting her friend about the upcoming wedding.

13. She told me that she was not on the phone and that she had sent her last text when she was at the traffic star.

14. She also told me in three (3) ways that she looked down at her phone at an incoming text then looked up and saw Unit 2; she then swerved to the right in an attempt to avoid a crash.

    ▪ The first way she told me was that she did look down to read a text.
    ▪ The next way she told me was that she possibly looked down to read a text.
    ▪ Then finally she told me that she would not put it past herself, to look down and read a text while driving.

15. She gave me consent to look at her phone records which revealed that actual text messages were not sent near the time of the crash. But I could not determine if she was on a social media site, such as Facebook.

16. A court order was sent to Verizon Cell Service requesting the Text and Phone usage around the time of the crash. All information from Verizon is attached to this report.

17. It is my opinion that Kubiak was reading a text either from a social media sight or an old text. She looked down and when she focused back on the road it was too late to avoid a collision.

18. I am now requesting a warrant be issued for her arrest for 2 counts of Criminally Negligent Homicide and 1 count of Driving While License Invalid.

THP-1 Continuation (8/04)  **TEXAS DEPARTMENT OF PUBLIC SAFETY**                Page 4 of 6
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

| | |
|---|---|
| FILE TITLE:  Kubiak, Ashley Marcella | COUNTY:  RUSK |
| INVESTIGATING OFFICER:  Trooper II Dustin Nichols | REPORT DATE:  05/15/13 |

**Witnesses:**

_Name & Addresses:_                                    _Will Testify To:_

Texas Department of Public Safety
Trooper II Dustin Nichols                              Investigation
Trooper Ricardo Fabianni                              Off-duty on scene
Sergeant George Greenway                          On scene
Corporal Jesse Stewart                                On scene
325 Fair Park
Henderson, TX 75654
903-657-0382

John Scholer                                              On scene
302 CR 311
Deberry, TX
903-692-8136

Laryn Jones                                               On scene
11 Woodbox
Henderson, TX
903-646-3469

Ray Bordelon                                             On scene
1504 East Fannin Apt. A
Marshall, TX
580-483-7502

Phillip and Crystal Felts                             On scene
10445 SH 43
Tatum, TX
903-601-1970
903-601-0170

Justice of the Peace                                   Pronouncing the deaths
Precicnt 5 Rusk County
Joe Sorrells
210 Charlevoix Street
Henderson, TX
903-657-0308

**Description and Custody of Evidence:**

_Description:_                                             _Disposition:_

Copy of driving record                              Given to District Attorney's Office
Copy of criminal History                           Given to District Attorney's Office
Copy of vehicle registration                      Given to District Attorney's Office

000006

EXHIBIT R

Page 5 of 6

THP-1 Continuation (8/04)

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

| | |
|---|---|
| FILE TITLE:   Kubiak, Ashley Marcella | COUNTY:  RUSK |
| INVESTIGATING OFFICER:   Trooper II Dustin Nichols | REPORT DATE:   05/15/13 |

| | |
|---|---|
| Copy of HQ 109s | Given to District Attorney's Office |
| Copy of In-Car Video | Given to District Attorney's Office |
| Copy of CRB-3 | Given to District Attorney's Office |
| Copy of Fatal Packet | Given to District Attorney's Office |
| Copy of Verizon Request and the Information | Given to District Attorney's Office |
| Copy of DWLI Packet | Given to District Attorney's Office |

**Weapons:**

None

**Victims:**

Sandra Mims Jones **(Deceased)**
Age 63

Shari Mims Standard **(Deceased)**
Age 62

Sammy Lane Meador (Injured)
Age 6

John & Joni Wood
3205 SH 43
Henderson, TX 75654

**Vehicles:**

*Description:*                                     *Disposition:*

**Unit # 1**                                       Inventoried and released to R&M Wrecker Service.
2003, white, Dodge PU
Registration:  TX BT1 4002
VIN #  1D3HU18Z43J518635
Registered owner:    Klayton Turlington
                     325 Meadowlark Lane
                     Longview, TX 75603
Vehicle Condition:   Crashed
HQ 109:              YES

**Unit # 2**                                       Inventoried and released to R&M Wrecker Service.
2008, black, Chevrolet SUV
Registration:  TX 32F WH9
VIN #  1GNFC135X8R229878
Registered owner:    William Jones
                     912 Richardson Drive
                     Henderson, TX 75654
Vehicle Condition:   Crashed
HQ 109:              YES

Inventoried and released to R&M Wrecker Service.

THP-1 Continuation (8/04)

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS HIGHWAY PATROL DIVISION**
**OFFENSE REPORT**

Page 6 of 6

| FILE TITLE:   Kubiak, Ashley Marcella | COUNTY:  RUSK |
| INVESTIGATING OFFICER:   Trooper II Dustin Nichols | REPORT DATE:   05/15/13 |

**Unit # 3**
2001, white, Ford PU
Registration:  TX BMB 1338
VIN #  1FTNW21F11EC04085
Registered owner:      John Wood
                       3205 SH 43
                       Henderson, TX 75654
Vehicle Condition:     Crashed
HQ 109:                YES

Exhibit R

Law Enforcement and TxDOT Use Only
☑ FATAL  ☐ CMV  ☐ SCHOOL BUS  ☐ RAILROAD  ☐ MAB  ☐ SUPPLEMENT  ☐ ACTIVE SCHOOL ZONE

| Total Num Units | 3 | Total Num Psns | 6 | TxDOT Crash ID |

**IDENTIFICATION AND LOCATION**

* Crash Date (MM/DD/YYYY): 0 4 / 3 0 / 2 0 1 3    * Crash Time (24HR/MM): 1 6 3 5    Case ID:    Local Use:    ☑ Outside City Limit

* County Name: RUSK    * City Name:

In your opinion, did this crash result in at least $1,000 damage to any one person's property?  ☑ Yes  ☐ No

Latitude (decimal degrees): 3 2 . 1 8 5 0 0    Longitude (decimal degrees): − 0 9 4 . 7 6 8 0 6

**ROAD ON WHICH CRASH OCCURRED**

* 1 Rdwy. Sys.: SH    * Hwy Num: 43    2 Rdwy Part: 1    Block Num.:    3 Street Prefix:    * Street Name:    4 Street Suffix:

☐ Crash Occurred on a Private Drive or Road/Private Property/Parking Lot    ☐ Toll Road/ Toll Lane    Speed Limit: 70    Const. Zone: ☐    Workers Present: ☑ Yes ☐ No    ☑ Yes ☐ No    Street Desc.:

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST ROAD OR REFERENCE MARKER**

At Int: ☐ Yes ☑ No    1 Rdwy Sys: CR    Hwy. Num.: 214 D    2 Rdwy. Part:    Block Num:    3 Street Prefix:    Street Name:    4 Street Suffix:

Distance from Int. or Ref. Marker: 20    ☑ FT ☐ MI    3 Dir. From Int. or Ref Marker: SW    Reference Marker:    Street Desc.:    RRX Num:

# TEXAS HIGHWAY PATROL DIVISION



# MAJOR CRASH INVESTIGATION

Investigated by: _____ Trooper Dustin Nichols _____

Approved by:     Date: 8-20-13

Exhibit R

Law Enforcement and TxDOT Use ONLY

| [x] FATAL | [ ] CMV | [ ] SCHOOL BUS | [ ] RAILROAD | [ ] MAB | [ ] SUPPLEMENT | [ ] ACTIVE SCHOOL ZONE | Total Num. Units L_L_3_L | Total Num. Prsns. L_L_6_L | TxDOT 13253771.1 Crash ID /201315604 |

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2010)**

Mail to▶ Texas Department of Transportation, Crash Records, P.O. Box 149349, Austin, TX 78714. Questions? Call (512) 486-5780
Refer to Attached Code Sheet for Numbered Fields
★=These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured, etc.)

Page: 1 of 4

**IDENTIFICATION & LOCATION**

| ★Crash Date (MM/DD/YYYY) 0 4 / 3 0 / 2 0 1 3 | ★Crash Time (24HRMM) 1 6 3 5 | Case ID | Local Use |

| ★County Name RUSK | ★City Name | [x] Outside City Limit |

| In your opinion, did this crash result in at least $1,000 damage to any one person's property? [x] Yes [ ] No | Latitude (decimal degrees) 3 2 . 1 8 5 0 0 | Longitude (decimal degrees) 0 9 4 . 7 6 8 0 6 |

**ROAD ON WHICH CRASH OCCURRED**

| 1 Rdwy. Sys. SH | 1 Hwy. Num. 43 | 2 Rdwy. Part 1 | Block Prefix | 3 Street Prefix | ★Street Name | 4 Street Suffix |

| [ ] Crash Occurred on a Private Drive or Road/Private Property/Parking Lot | [ ] Toll Road/ Toll Lane | Speed Limit 70 | [ ] Const. Zone | [ ] Workers Present | [ ] Yes [ ] No Street Desc. | |

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER**

| At Int. [ ] Yes [x] No | 1 Rdwy. Sys. CR | Hwy. Num. 2140 | 2 Rdwy. Part | Block Num. | 3 Street Prefix | Street Name | 4 Street Suffix |

| Distance from Int. or Ref. Marker 20 | [x] FT [ ] MI | 3 Dir. from Int. or Ref. Marker SW | Reference Marker | Street Desc. | | RRX Num. L_L_L_L |

**VEHICLE, DRIVER & PERSONS**

| Unit Num. 1 | 5 Unit Desc. 1 | [ ] Parked Vehicle | [ ] Hit and Run | LP State TX | LP Num. BT14022 | VIN 1 D 3 H U 1 8 2 4 D 3 5 1 6 3 5 | | [ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked) |

| Veh. Year 2 0 1 3 | 6 Veh. Color WHI | Veh. Make DODGE | Veh. Model DODGE RAM PICKUP OR VAN | 7 Body Style PK |

| 8 DL/ID Type 1 | DL/ID State TX | DL/ID Num. 25366646 | 9 DL Class C | 10 CDL End. | 11 DL Rest. 96 | DOB (MM/DD/YYYY) 0 7 / 2 2 / 1 9 9 1 |

| Address (Street, City, State, ZIP) 13261  HILL CREEK RD  WHITEHOUSE, TX 75791 |

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | KUBIAK, ASHLEY MARCELLA | B | 21 | W | 2 | 1 | 8 | 2 | 97 | N | 96 | | 96 | 97 | 97 |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

| [x] Owner [ ] Lessee | Owner/Lessee Name & Address TURLINGTON, KLAYTON, 325  MEADOWLARK LANE  LONGVIEW, TX 75603 |

| Proof of Fin. Resp. [x] Yes [ ] No | [ ] Expired [ ] Exempt | 26 Fin. Resp. Type 2 | Fin. Resp. Name Colonial County Mutual Insurance Company | Fin. Resp. Num. 007502886 |

| Fin. Resp. Phone Num. 800-421-3535 | 27 Vehicle Damage Rating 1 L_1_2_" F L_L " | 27 Vehicle Damage Rating 2 | Vehicle Inventoried [x] Yes [ ] No |

| Towed By R & M Wrecker Service 903-655-6880 | Towed To 1127 Ohio Street, Henderson, TX |

| Unit Num. 2 | 5 Unit Desc. 1 | [ ] Parked Vehicle | [ ] Hit and Run | LP State TX | LP Num. 32FWH9 | VIN 1 G N F C 1 3 5 X 8 R 1 2 1 7 8 | | [ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked) |

| Veh. Year 2 0 0 8 | 6 Veh. Color BLK | Veh. Make CHEVROLET | Veh. Model CHEVROLET TAHOE (UTILITY) | 7 Body Style SV |

| 8 DL/ID Type 1 | DL/ID State TX | DL/ID Num. 04113211 | 9 DL Class CM | 10 CDL End. 96 | 11 DL Rest. A | DOB (MM/DD/YYYY) 0 5 / 1 4 / 1 9 4 9 |

| Address (Street, City, State, ZIP) 912  RICHARDSON DR  HENDERSON, TX 75654 |

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | JONES, SANDRA MIMS | K | 63 | W | 2 | 1 | 1 | 5 | 97 | N | 96 | | 96 | 97 | 97 |
| 2 | 2 | 3 | STANDARD, SHARI MIMS | K | 62 | W | 2 | 1 | 1 | 5 | 97 | N | | | | | |
| 3 | 2 | 4 | MEADOR, SAMMY LANE | A | 6 | W | 1 | 1 | 4 | 5 | 97 | N | | | | | |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

| [ ] Owner [x] Lessee | Owner/Lessee Name & Address JONES, WILLIAM R, 912  RICHARDSON DR  HENDERSON, TX 75654 |

| Proof of Fin. Resp. [x] Yes [ ] No | [ ] Expired [ ] Exempt | 26 Fin. Resp. Type 2 | Fin. Resp. Name Allstate County Mutual Insurance | Fin. Resp. Num. 000000936757548 |

| Fin. Resp. Phone Num. 972-915-5000 | 27 Vehicle Damage Rating 1 L_2_" R P_L7 " | 27 Vehicle Damage Rating 2 6 " B R 3 | Vehicle Inventoried [x] Yes [ ] No |

| Towed By R & M Wrecker Service 903-655-6880 | Towed To 1127 Ohio Street, Henderson, TX |

Exhibit R

Law Enforcement and TxDOT Use ONLY.
Form CR-3  1/1/2010

| Case ID | TxDOT Crash ID 13253771.1/2013156046 | Page 2 of 4 |

**TOF INJURED/KILLED / DISPL.**

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HR/MM) |
|---|---|---|---|---|---|
| | 1 | TRINITY MOTHER FRANCIS-TYLER | CHAMPION EMS | | |
| 1 | 1 | CRAWFORD A. CRIM FUNERAL HOME | CRAWFORD A. CRIM HEARSE | 04/30/2013 | 1615 |
| 1 | 2 | CRAWFORD A. CRIM FUNERAL HOME | CRAWFORD A. CRIM HEARSE | 04/30/2013 | 1615 |
| | 3 | ETMC-HENDERSON | CHAMPION EMS | | |

**CHARGES**

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| 1 | 1 | CRIMINALLY NEGLIGENT HOMICIDE-FELONY | TX133I0FOZ001 |
| 1 | 1 | CRIMINALLY NEGLIGENT HOMICIDE-FELONY | TX133I0FOZ001 |
| 1 | 1 | DRIVING WHILE LICENSE INVALID- MISD. A | TX133I0FOZ002 |

**DAMAGE**

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |

**CMV**

| Unit Num. | ☐ 10,001+ LBS. | ☐ TRANSPORTING HAZARDOUS MATERIAL | ☐ 9+ CAPACITY | 28 Veh. Oper. | 29 Carrier ID Type | Carrier ID Num. |
|---|---|---|---|---|---|---|

Carrier's Corp. Name

Carrier's Primary Addr.

| 30 Rdwy. Access | 31 Veh. Type | ☐ RGVW ☐ GVWR | HazMat Released | ☐ Yes ☐ No | 32 HazMat Class Num. | HazMat ID Num. | 32 HazMat Class Num. | HazMat ID Num. |
|---|---|---|---|---|---|---|---|---|

| 33 Cargo Body Style | Trailer 1 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type | Trailer 2 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type |
|---|---|---|---|---|---|---|---|---|

| Sequence Of Events | 35 Seq. 1 | 35 Seq. 2 | 35 Seq. 3 | 35 Seq. 4 | Total Num. Axles | Total Num. Tires |
|---|---|---|---|---|---|---|

**FACTORS & CONDITIONS**

| 36 Contributing Factors (Investigator's Opinion) | | | 37 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Num. | Contributing | May Have Contrib. | Contributing | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traff Contr |
| 1 | 72 | 22 | | | 1 | 1 | 97 | 1 | 1 | 1 | 12 |

Field Diagram – Not to Scale

**NARRATIVE AND DIAGRAM**

Investigator's Narrative Opinion of What Happened (Attach Additional Sheets If Necessary)

Units 1 and 2 were traveling NE on SH 43. Unit 2 was slowing to make a left turn on to CR 214-D. Driver of Unit 1, was distracted possibly reading a text on her cell phone and failed to Control Unit 1's speed, striking Unit 2 in the BR with its FL. Unit 2 was pushed into the oncoming lane where it was struck in the RP by Unit 3, which was traveling SW on SH 43. Unit 2 flipped and rolled to the left, coming to rest in the ditch. Unit 3 came to rest facing N on the shoulder. Unit 1 came to rest facing N in the intersection of SH 43 and CR 214-D.

**INVESTIGATOR**

| Time Notified (24HR/MM) 1638 | How Notified RUSK COUNTY S.O. | Time Arrived (24HR:MM) 1642 | Report Date (MM/DD/YYYY) 04/30/2013 |
|---|---|---|---|
| Invest. ☒ Yes Comp. ☐ No | Investigator Name (Printed) Trooper II Nichols, Dustin S. | | ID Num. 12336 |
| ORI Num. TXDPS:2500 | ★Agency DEPARTMENT OF PUBLIC SAFETY, STATE OF TEXAS | | District/ Area HP1B1 |

000011

Law Enforcement and TxDOT Use ONLY

[x] FATAL   [ ] CMV   [ ] SCHOOL BUS   [ ] RAILROAD   [ ] MAB   [ ] SUPPLEMENT   [ ] SCHOOL ZONE   [ ] ACTIVE

Total Num. Units | 3
Total Num. Prsns. | 6
TxDOT | 13253771.1
Crash ID | 201315604

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2010)**
Mail to: Texas Department of Transportation, Crash Records, P.O. Box 149349, Austin, TX 78714. Questions? Call (512) 486-5780
Refer to Attached Code Sheet for Numbered Fields
✱=These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured, etc.)

Page 3 of 4

**IDENTIFICATION & LOCATION**

★Crash Date (DD/YYYY): 0 4 / 3 0 / 2 0 1 3
★Crash Time (24HRMM): 1 6 3 5
Case ID:
Local Use:

County Name: RUSK
★City Name:
[x] Outside City Limit

In your opinion, did this crash result in at least $1,000 damage to any one person's property? [x] Yes [ ] No
Latitude (decimal degrees): 3 2 . 1 8 5 0 0
Longitude (decimal degrees): - 0 9 4 . 7 6 8 0 6

**ROAD ON WHICH CRASH OCCURRED**

★1 Rdwy. Sys.: SH
★Hwy. Num.: 43
2 Rdwy. Part:
Block Num.:
3 Street Prefix:
★Street Name:
4 Street Suffix:

[ ] Crash Occurred on a Private Drive or Road/Private Property/Parking Lot
[ ] Toll Road/ Toll Lane
Speed Limit: 70
Const. Zone [ ]Yes [ ]No
Workers Present [ ]Yes [ ]No
Street Desc.:

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER**

At Int.: [ ] Yes [x] No
1 Rdwy. Sys.: CR
Hwy. Num.: 214D
2 Rdwy. Part:
Block Num.:
3 Street Prefix:
Street Name:
4 Street Suffix:

Distance from Int. or Ref. Marker: 20
[x] FT [ ] MI
3 Dir. from Int. or Ref. Marker: SW
Reference Marker:
Street Desc.:
RRX Num.:

**VEHICLE, DRIVER & PERSONS**

Unit Num.: 3
5 Unit Desc.: 1
[ ] Parked Vehicle
[ ] Hit and Run
LP State: TX
LP Num.: BMB1338
VIN: 1 F T N W 2 1 F 1 1 E C 0 1 0 8 5
[ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

Veh. Year: 2 0 0 1
6 Veh. Color: WHI
Veh. Make: FORD
Veh. Model: FORD "F" SERIES
7 Body Style: PK

8 DL/ID Type: 1
DL/ID State: TX
DL/ID Num.: 06442307
9 DL Class: CM
10 CDL End.: 96
11 DL Rest.: 96
DOB (MM/DD/YYYY): 0 8 0 9 5 4

Address (Street, City, State, ZIP): 3205 HWY 43 E HENDERSON, TX 75652

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Rest. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | WOOD, JOHN KIM | A | 58 | W | 1 | 1 | 1 | 2 | 97 | N | | 96 | 97 | 97 | |
| 2 | 2 | 3 | WOOD, JONI GAIL | A | 54 | W | 2 | 1 | 1 | 2 | 97 | N | Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit. | | | | |

[x] Owner [ ] Lessee
Owner/Lessee Name & Address: WOOD, JOHN KIM, 3205 HWY 43 E HENDERSON, TX 75652

Proof of Fin. Resp. [x] Yes [ ] No
[ ] Expired [ ] Exempt
26 Fin. Resp. Type: 2
Fin. Resp. Name: Progressive County Mutual Insurance
Fin. Resp. Num.: 08054256

Fin. Resp. Phone Num.: 512-664-0000
27 Vehicle Damage Rating 1: 1 2 - F D
27 Vehicle Damage Rating 2:
Vehicle Inventoried [x] Yes [ ] No

Towed By: R & M Wrecker Service 903-655-6860
Towed To: 1127 Ohio Street, Henderson, TX

Unit Num.:
5 Unit Desc.:
[ ] Parked Vehicle
[ ] Hit and Run
LP State:
LP Num.:
VIN:
[ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

Veh. Year:
6 Veh. Color:
Veh. Make:
Veh. Model:
7 Body Style:

8 DL/ID Type:
DL/ID State:
DL/ID Num.:
9 DL Class:
10 CDL End.:
11 DL Rest.:
DOB (MM/DD/YYYY):

Address (Street, City, State, ZIP):

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Rest. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit. | | | | |

[ ] Owner [ ] Lessee
Owner/Lessee Name & Address:

Proof of Fin. Resp. [ ] Yes [ ] No
[ ] Expired [ ] Exempt
26 Fin. Resp. Type:
Fin. Resp. Name:
Fin. Resp. Num.:

Fin. Resp. Phone Num.:
27 Vehicle Damage Rating 1:
27 Vehicle Damage Rating 2:
Vehicle Inventoried [ ] Yes [ ] No

Towed By:
Towed To:

Exhibit R

Law Enforcement and TxDOT Use ONLY.

Form CR-3 1/1/2010

Case ID

TxDOT Crash ID  13253771.1/2013156046

Page 4 of 4

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|
| 3 | 1 | GOOD SHEPHERD-LONGVIEW | CHAMPION EMS | | |
| 3 | 2 | GOOD SHEPHERD-LONGVIEW | CHAMPION EMS | | |

**DISPO OF INJURED KILLED**

**CHARGES**

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |

**DAMAGE**

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |

**CMV**

| Unit Num. | ☐ 10,001+ LBS. | ☐ TRANSPORTING HAZARDOUS MATERIAL | ☐ 9+ CAPACITY | 28 Veh. Oper. | 29 Carrier ID Type | Carrier ID Num. |
|---|---|---|---|---|---|---|

Carrier's Corp. Name

Carrier's Primary Addr.

| 30 Rdwy. Access | 31 Veh. Type | ☐ RGVW ☐ GVWR | HazMat Released ☐ Yes ☐ No | 32 HazMat Class Num. | HazMat ID Num. | 32 HazMat Class Num. | HazMat ID Num. |
|---|---|---|---|---|---|---|---|

| 33 Cargo Body Style | Trailer 1 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type | Trailer 2 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type |
|---|---|---|---|---|---|---|---|---|

| Sequence Of Events | 35 Seq. 1 | 35 Seq. 2 | 35 Seq. 3 | 35 Seq. 4 | Total Num. Axles | Total Num. Tires |
|---|---|---|---|---|---|---|

**RS & CONDITIONS**

| 36 Contributing Factors (Investigator's Opinion) | | 37 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Unit Num. | Contributing | May Have Contrib. | Contributing | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traffic Contro |
| | | | | | | | | | | |

**NARRATIVE AND DIAGRAM**

Investigator's Narrative Opinion of What Happened (Attach Additional Sheets if Necessary)

Field Diagram – Not to Scale

**INVESTIGATOR**

| Time Notified (24HRMM) 1 6 3 8 | How Notified RUSK COUNTY S.O. | Time Arrived (24HR:MM) 1 6 4 2 | Report Date (MM/DD/YYYY) 0 4 3 0 2 0 1 3 |
|---|---|---|---|

| Invest. ☒ Yes Comp. ☐ No | Investigator Name (Printed) Trooper II Nichols, Dustin S. | | ID Num. 12338 |
|---|---|---|---|

| ORI Num. T X D P S 2 5 0 0 | ★Agency DEPARTMENT OF PUBLIC SAFETY, STATE OF TEXAS | District/ Area H P 1 B 1 0 |
|---|---|---|

000013